Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
12/16/2022 08:04 AM CST

State of Nebraska, appellee, v.
James T. Godek, appellant.
___ N.W.2d ___

Filed December 2, 2022.    No. S-22-015.

1. **Convictions: Appeal and Error.** A conviction will be affirmed, in the absence of prejudicial error, if the properly admitted evidence, viewed and construed most favorably to the State, is sufficient to support the conviction.
2. **Judgments: Appeal and Error.** When reviewing questions of law, an appellate court resolves the questions independently of the lower court's conclusions.
3. **Statutes.** Statutory interpretation presents a question of law.
4. ____. Statutory interpretation begins with the text, and the text is to be given its plain and ordinary meaning.
5. **Statutes: Appeal and Error.** An appellate court will not resort to interpretation of statutory language to ascertain the meaning of words which are plain, direct, and unambiguous.
6. **Statutes.** It is not within the province of the courts to read meaning into a statute that is not there or to read anything direct and plain out of a statute.
7. **Criminal Law: Statutes.** Penal statutes must be strictly construed and are considered in the context of the object sought to be accomplished, the evils and mischiefs sought to be remedied, and the purpose sought to be served.
8. **Statutes.** A court must place on a statute a reasonable construction which best achieves the statute's purpose, rather than a construction which would defeat that purpose.
9. **Statutes: Legislature.** It is a fundamental canon of statutory construction that words generally should be interpreted as taking their ordinary meaning at the time the Legislature enacted the statute.
10. **Criminal Law: Words and Phrases.** The term "threaten" used in Neb. Rev. Stat. § 28-311.01 (Reissue 2016) requires communication of a threat to a listener or recipient.

11. **Jurisdiction: Appeal and Error.** A jurisdictional question which does not involve a factual dispute is determined by an appellate court as a matter of law.

12. **Criminal Law: Jurisdiction.** Ordinarily, no penalty can be incurred under the law of this state except for transactions occurring within this state, and our state law has no extraterritorial effect.

13. ____: ____. When some requisite elements of a crime are committed outside Nebraska, but an essential element of the crime is committed or occurs in Nebraska, a Nebraska court has subject matter jurisdiction for prosecution of a defendant charged with the crime.

14. **Venue.** Venue is the place where a court's inherent power to adjudicate may be exercised.

15. **Criminal Law: Jurisdiction.** The courts of the county where an offense is committed have jurisdiction of the subject matter of the cause and jurisdiction to try the accused for the crime charged.

16. **Criminal Law: Venue: Jurisdiction: Waiver: Proof.** In a criminal case, proper venue is a jurisdictional fact that, in the absence of a defendant's waiver by requesting a change of venue, the State has the burden of proving beyond a reasonable doubt.

17. **Appeal and Error.** An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it.

Appeal from the District Court for Sarpy County: STEFANIE A. MARTINEZ, Judge. Affirmed.

Todd A. West, Assistant Sarpy County Public Defender, for appellant.

Douglas J. Peterson, Attorney General, and Nathan A. Liss for appellee.

HEAVICAN, C.J., MILLER-LERMAN, CASSEL, STACY, FUNKE, PAPIK, and FREUDENBERG, JJ.

CASSEL, J.

## I. INTRODUCTION

James T. Godek appeals from his conviction and sentence for terrorístic threats,[1] based upon phone calls he placed from Council Bluffs, Iowa, to persons in Bellevue, Sarpy County,

---

[1] See Neb. Rev. Stat. § 28-311.01 (Reissue 2016).

Nebraska. Arguing that the elements of the offense do not require a recipient or listener, he contests the district court's territorial jurisdiction and venue; sufficiency of the evidence; the court's instruction on venue; and its denial of his motions to quash, for directed verdict, for mistrial, and for new trial. Because we reject his premise, his assigned errors lack merit. We affirm the judgment.

## II. BACKGROUND

### 1. Factual Background

Godek placed a series of phone calls from his residence in Council Bluffs to his sister's business, which is in Bellevue. Prior to making the phone calls, Godek had not seen or spoken with his sister, Jayme Cronk, in approximately 3 years. Cronk was working at her business with Jennifer Merriman, Godek's other sister, when Godek made the phone calls at issue.

Cronk answered the first phone call. Godek identified himself to Cronk and then stated that he lost his job and wanted to die. According to Cronk, Godek became belligerent while speaking to her on the phone and proceeded to blame Cronk, Merriman, and Cronk's husband for his situation. Godek then stated that he wanted Cronk dead. After Cronk hung up the phone, she called the 911 emergency dispatch service to report the incident. Cronk was told that an officer would be sent to her business to make a report.

Godek called the business a second time. This time Merriman answered the phone. Godek continued making threatening statements, including telling Merriman that he was going to kill Cronk's husband, who was working in Council Bluffs. Cronk recorded the second phone call on her cell phone because she "knew it wasn't going to be good." Cronk promptly called her husband to notify him of Godek's threats.

Godek called a third time. While Cronk and Merriman were speaking with Godek, an officer from the Bellevue Police Department arrived at Cronk's business.

Godek then called yet again. Merriman answered the phone, identified the caller as Godek, and gave the phone to the

officer. The officer attempted to talk with Godek and observed that he seemed agitated and upset. Godek challenged the officer to come to Council Bluffs to fight him.

Thereafter, the officer notified law enforcement in Council Bluffs of Godek's situation. Law enforcement officers responded that they had done a welfare check at Godek's residence earlier that day and indicated that they would not be investigating the phone calls. The officer applied for an arrest warrant in Sarpy County.

## 2. Procedural History

### (a) Information

The State filed an amended information in the district court for Sarpy County charging Godek with terroristic threats, a Class IIIA felony, pursuant to § 28-311.01.

### (b) Pretrial Motion to Quash

Prior to trial, Godek filed a motion to quash, asserting lack of subject matter jurisdiction and improper venue. Godek contended that terroristic threats did not take place in Sarpy County because Godek uttered the threats while he was in Iowa. The State countered that the terroristic threats statute requires that a threat be made toward "another,"[2] meaning that a recipient is a material element of the offense. The State asserted that the recipient here received the threats in Sarpy County, making jurisdiction and venue appropriate.[3] The court agreed with the State and overruled the motion to quash.

### (c) Jury Trial

The court, with a jury, tried Godek for terroristic threats. After the State rested its case, Godek moved for a directed verdict. Godek asserted that the State failed to prove beyond a reasonable doubt that the alleged terroristic threats took place in Sarpy County. The court disagreed with Godek and overruled

---

[2] See § 28-311.01(1)(a).

[3] See *State v. Red Kettle*, 239 Neb. 317, 476 N.W.2d 220 (1991).

the motion, reasoning that the State met its burden to prove a material element of terroristic threats—receipt of the threat by another—took place in Sarpy County.

At the close of the evidence, the parties held a conference regarding the court's proposed jury instructions. The State proposed the following instruction to define the elements of terroristic threats:

The material elements of the charge of terroristic threats, as charged in Count 1, are as follows:

1. The defendant, . . . Godek, did threaten to commit a crime of violence

a. with the intent to terrorize another; or

b. in reckless disregard of the risk of causing such terror;

2. The act took place on or about August 12, 2020; and

3. At least one of the material elements in paragraph 1 above took place in Sarpy County, Nebraska.

Godek objected to provision (3) as a misstatement of law, arguing that the instruction improperly expanded jurisdiction based on a nonexistent element of terroristic threats—a recipient. The court adopted the State's instruction and read it to the jury.

During closing arguments, the State told the jury that a recipient is a material element of terroristic threats. The State further explained that the offense is not committed until someone hears or receives the alleged threat. The State argued that the recipients of Godek's threats were located in Sarpy County, which was sufficient to show that Godek's offense took place there. Godek objected and moved to strike the State's argument. In addition, Godek moved for a curative instruction to the jury or, in the alternative, a mistrial. The court overruled his motion.

### (d) Verdict, New Trial Motion, and Sentencing

The jury found Godek guilty of terroristic threats. He timely moved for a new trial on various grounds, including

prosecutorial misconduct, insufficiency of the State's evidence, and improperly instructing the jury on the elements of terroristic threats. Following a hearing, the court denied the motion for a new trial. It sentenced him to 2 years' imprisonment, followed by 18 months of post-release supervision.

Godek filed a timely appeal, which we moved to our docket.[4]

## III. ASSIGNMENTS OF ERROR

Godek assigns, restated, that the district court erred by (1) overruling the motion to quash for lack of subject matter jurisdiction; (2) giving the jury an "improper and misleading" instruction of the law, which stated that venue was appropriate in Sarpy County; (3) overruling Godek's objection to the prosecutor's "improper[]" statements during closing arguments, not issuing a curative instruction, and overruling the motion for a mistrial; (4) overruling Godek's motion for a directed verdict; (5) finding the evidence sufficient to sustain the jury's guilty verdict; and (6) overruling the motion for a new trial.

## IV. STANDARD OF REVIEW

[1,2] We set forth two overarching standards of review. A conviction will be affirmed, in the absence of prejudicial error, if the properly admitted evidence, viewed and construed most favorably to the State, is sufficient to support the conviction.[5] When reviewing questions of law, an appellate court resolves the questions independently of the lower court's conclusions.[6] Additional standards are set forth at appropriate points in the analysis section below.

## V. ANALYSIS

At oral argument, Godek iterated two concessions, both of which are consistent with his arguments in brief. First, there is no dispute regarding the facts relating to the phone

---

[4] See Neb. Rev. Stat. § 24-1106(3) (Cum. Supp. 2022).

[5] *State v. Pauly*, 311 Neb. 418, 972 N.W.2d 907 (2022).

[6] *State v. Jones*, 307 Neb. 809, 950 N.W.2d 625 (2020).

calls. Second, all of his assignments of error are based on his interpretation of the elements of terroristic threats under § 28-311.01.

Ordinarily, we would first address the district court's jurisdiction. But here, to answer the jurisdictional question, we must first determine the elements of terroristic threats as applied to these facts.

## 1. Elements of § 28-311.01

### (a) Godek's Contention and State's Response

Godek contends that the district court erred by interpreting the word "another" in the terroristic threats statute[7] to require that someone actually receive the threat as an element of his offense. Godek points to the plain language of § 28-311.01(1), which, he argues, does not state that the person must "communicate" the threat or that the threat must be "receive[d]" by another person.[8] Godek asserts that the court improperly read those terms into the statute. Godek also suggests that the word "another" refers only to the defendant's mens rea, or the requisite intent for committing terroristic threats.

The State counters that the plain language of the statute requires making threats "[w]ith the intent to terrorize another"[9] or "[i]n reckless disregard of the risk of causing such terror."[10] The State asserts that this language indicates that a threat must be "communicated or conveyed to another."[11] The State also asserts that a "'threat,'" by definition, means "'[a] *communicated* intent to inflict harm or loss on another or on another's property.'"[12] Finally, the State suggests that Godek's position, which would permit a conviction for terroristic threats even in

---

[7] See § 28-311.01(1)(a).

[8] Brief for appellant at 26.

[9] § 28-311.01(1)(a).

[10] § 28-311.01(1)(c).

[11] Brief for appellee at 14.

[12] *Id.* (quoting Black's Law Dictionary 1519 (8th ed. 1999)).

the absence of a communication, is a "non sequitur" in light of the statute's purpose.[13]

### (b) Standard of Review

[3] Statutory interpretation presents a question of law.[14]

### (c) Resolution

[4-6] To determine the elements of terroristic threats as applied to these facts, we begin by setting forth familiar principles of statutory interpretation. Statutory interpretation begins with the text, and the text is to be given its plain and ordinary meaning.[15] An appellate court will not resort to interpretation of statutory language to ascertain the meaning of words which are plain, direct, and unambiguous.[16] Similarly, it is not within the province of the courts to read meaning into a statute that is not there or to read anything direct and plain out of a statute.[17]

[7,8] Penal statutes must be strictly construed and are considered in the context of the object sought to be accomplished, the evils and mischiefs sought to be remedied, and the purpose sought to be served.[18] A court must place on a statute a reasonable construction which best achieves the statute's purpose, rather than a construction which would defeat that purpose.[19]

Section 28-311.01, which creates the offense of terroristic threats, provides:

> (1) A person commits terroristic threats if he or she threatens to commit any crime of violence:

---

[13] *Id.* at 15.

[14] *State v. Space, ante* p. 456, 980 N.W.2d 1 (2022).

[15] *Dutcher v. Nebraska Dept. of Corr. Servs., ante* p. 405, 979 N.W.2d 245 (2022).

[16] *Id.*

[17] *State v. Knight*, 311 Neb. 485, 973 N.W.2d 356 (2022).

[18] *State v. Hofmann*, 310 Neb. 609, 967 N.W.2d 435 (2021).

[19] *State v. Pauly, supra* note 5.

(a) With the intent to terrorize another;

(b) With the intent of causing the evacuation of a building, place of assembly, or facility of public transportation; or

(c) In reckless disregard of the risk of causing such terror or evacuation.

(2) Terroristic threats is a Class IIIA felony.

We first turn to the plain language of the statute. Section 28-311.01(1)(a) states that terroristic threats occur when a person "threatens" to commit a crime of violence intending to terrorize "another." Although we have not previously defined the word "threatens" under § 28-311.01, we have considered various definitions and held that it is a term of common usage and understanding.[20] In reaching that conclusion, we referred to definitions that recognized the existence of a communication.[21]

[9] The cited legal definitions are consistent with the common definition of "threaten" at the time the Legislature adopted § 28-311.01 in 1986.[22] It is a fundamental canon of statutory construction that words generally should be interpreted as taking their ordinary meaning at the time the Legislature enacted the statute.[23] Dictionaries defined "threaten" as "[t]o try to

---

[20] See *State v. Schmailzl*, 243 Neb. 734, 502 N.W.2d 463 (1993).

[21] See, e.g., *United States v. Baish*, 460 A.2d 38, 42 (D.C. 1983), *abrogated on other grounds, Carrell v. U.S.*, 80 A.3d 163 (D.C. 2013) ("a person 'threatens' when she utters words, which are intended to convey her desire to inflict physical or other harm on any person or on property, and these words are communicated to someone"); *State v. Porter*, 384 A.2d 429, 434 (Me. 1978) ("[a] communication is a threat if it carries the promise of evil under such circumstances that a reasonable person receiving the communication would believe that such was to ensue at the hands of the communicator, or his allies"); *State v. Gunzelman*, 210 Kan. 481, 486, 502 P.2d 705, 710 (1972) ("[t]he word 'threat' . . . means a communicated intent to inflict physical or other harm on any person or on property").

[22] See 1986 Neb. Laws, L.B. 956, § 11.

[23] *Nebraska Republican Party v. Shively*, 311 Neb. 160, 971 N.W.2d 128 (2022).

influence (a person) by menaces; to utter or hold out a threat against; to declare . . . one's intention of inflicting injury upon"[24]; "to utter threats against : promise punishment, reprisal, or other distress to"[25]; and "to be a menace or source of danger to."[26] These definitions teach that the transitive verb "threaten" includes the concept of a listener or recipient.

We also agree with the State that the statutory language indicates that the threat must be received by "another" for the offense to occur. Godek argues that the word "another" refers only to the actor's intent and directs our attention to our analysis in *State v. Smith*.[27]

The issue in *Smith* was whether third degree assault is a lesser-included offense of terroristic threats. We applied a statutory elements test in which a court looks to the statutory elements of each crime rather than the particular facts of a specific case.

We first noted that the two offenses have at least one element in common: a threat. We observed that in addition to a threat, § 28-311.01(1)(a) requires that the threat to commit a violent crime be made "[w]ith the intent to terrorize another." We explained that "the intent to terrorize another is an *intent to produce intense fear or anxiety in another*."[28]

In analyzing the elements of § 28-311.01 in *Smith*, we made two other observations pertinent here. First, we explained that "[terroristic threats] need not produce a result in the

---

[24] 17 The Oxford English Dictionary 998 (2d ed. 1989).

[25] Webster's Third New International Dictionary of the English Language, Unabridged 2382 (1986); Webster's Third New International Dictionary of the English Language, Unabridged 2382 (1981). See, also, Webster's Ninth New Collegiate Dictionary 1229 (1983) ("to utter threats against," "to give signs or warning of," "to hang over dangerously," and "to announce as intended or possible").

[26] Webster's Encyclopedic Unabridged Dictionary of the English Language 1478 (1989).

[27] *State v. Smith*, 267 Neb. 917, 678 N.W.2d 733 (2004).

[28] *Id.* at 921, 678 N.W.2d at 736 (emphasis supplied).

*victim*."[29] Second, § 28-311.01(1)(a) "does not require that the *recipient* of the threat be actually terrorized, and it does not require an intent to execute the threats made."[30]

[10] Our analysis in *Smith* confirms that the word "another" refers to the person hearing or receiving the threat. We agree with the State that the only way in which a person could conceivably intend "to produce intense fear or anxiety in another" is by communicating the threat to someone other than the actor. Additionally, our references in *Smith* to a "victim" and a "recipient" support our conclusion that the word "another" refers to the person hearing or receiving the threat. We hold that the term "threaten" used in § 28-311.01 requires communication of a threat to a listener or recipient.

We also find some guidance in our decision in *State v. Hamilton*,[31] holding an earlier version of a terroristic threats statute unconstitutional. Although that decision considered statutory language quite different from our current statute, we noted that the statute there contained the word "threaten," but it did not define the term "threat." We further explained that the statute did not "describe how or to whom, if anyone, the threat must be made."[32] Thus, we asked: "Is it a violation of this act to make the threat if the threat is neither heard nor received by the anticipated victim, or does a violation occur only if there is knowledge and understanding by the party to whom it is directed?"[33]

We also explained that the statute there, which had been adopted in 1977,[34] while similar in purpose to the Model Penal

---

[29] *Id.* at 922, 678 N.W.2d at 737 (emphasis supplied).

[30] *Id.* at 921, 678 N.W.2d at 736 (emphasis supplied) (citing *State v. Saltzman*, 235 Neb. 964, 458 N.W.2d 239 (1990)).

[31] *State v. Hamilton*, 215 Neb. 694, 340 N.W.2d 397 (1983) (declaring Neb. Rev. Stat. § 28-311 (Reissue 1979) unconstitutionally vague).

[32] *Id.* at 697, 340 N.W.2d at 399.

[33] *Id.*

[34] 1977 Neb. Laws, L.B. 38, § 26.

Code, was a significant departure from the code's language. We quoted from the code, which provided: "'A person is guilty of a felony of the third degree if he threatens to commit any crime of violence *with purpose to terrorize another* . . . .'"[35] Contrasting that language with § 28-311, we stated:

> The language of the Model Penal Code is certainly much clearer than that adopted by the Nebraska Legislature. An actor violates the Model Penal Code when he or she threatens to commit any crime of violence, with the intent to terrorize another, regardless of what the outcome of the act will be or of *how the victim receives the threat.*[36]

On appeal here, Godek makes a similar argument, asserting that the statute does not describe how or to whom, if anyone, the threat must be made. But the statute now before us incorporated the Model Penal Code language. Thus, our discussion in *Hamilton* supports our conclusions that the word "another" refers to the person who receives the threat and that the word "threaten" requires communication of a threat to a listener or recipient.

Because the terroristic threats statute requires that the threat be communicated to another, a recipient was an essential element of Godek's offense. Accordingly, the district court did not err in its interpretation of § 28-311.01(1)(a) as applied to these facts.

## 2. Jurisdiction and Venue

### (a) Godek's Contention

We next address Godek's arguments regarding jurisdiction and venue. Godek asserts that he committed the offense in Iowa rather than Nebraska, depriving the district court of

---

[35] See *State v. Hamilton, supra* note 31, 215 Neb. at 698, 340 N.W.2d at 399 (emphasis in original). See, also, Model Penal Code § 211.3, 10A U.L.A. 418 (2001).

[36] *State v. Hamilton, supra* note 31, 215 Neb. at 698-99, 340 N.W.2d at 399-400 (emphasis supplied).

subject matter jurisdiction and rendering venue improper. Godek contends that the district court erred by inventing a new element of terroristic threats—receipt of the threat by another—in order to exercise jurisdiction.

### (b) Standard of Review

[11] A jurisdictional question which does not involve a factual dispute is determined by an appellate court as a matter of law.[37]

### (c) Resolution

Godek's argument challenges only Nebraska's territorial jurisdiction and the related requirement of proper venue. He does not otherwise challenge the district court's subject matter jurisdiction. We limit our analysis accordingly.

[12,13] In criminal matters, two territorial jurisdiction principles may apply. Ordinarily, no penalty can be incurred under the law of this state except for transactions occurring within this state, and our state law has no extraterritorial effect.[38] However, when some requisite elements of a crime are committed outside Nebraska, but an essential element of the crime is committed or occurs in Nebraska, a Nebraska court has subject matter jurisdiction for prosecution of a defendant charged with the crime.[39] It follows that any element of an offense can confer territorial jurisdiction.[40]

[14] Venue is the place where a court's inherent power to adjudicate may be exercised.[41] Article I, § 11, of the Nebraska Constitution provides that an accused shall have the right to

---

[37] *Mann v. Mann, ante* p. 275, 978 N.W.2d 606 (2022).

[38] *State v. Karsten*, 194 Neb. 227, 231 N.W.2d 335 (1975) (citing *State v. Hyslop*, 131 Neb. 681, 269 N.W. 512 (1936)).

[39] *State v. Red Kettle, supra* note 3; *State v. Schaaf*, 234 Neb. 144, 449 N.W.2d 762 (1989); *State v. Manchester*, 213 Neb. 670, 331 N.W.2d 776 (1983); *State v. Hilpert*, 213 Neb. 564, 330 N.W.2d 729 (1983).

[40] See *State v. Manchester, supra* note 39.

[41] *State v. Warlick*, 308 Neb. 656, 956 N.W.2d 269 (2021).

a jury trial in the "county or district in which the offense is alleged to have been committed." Similarly, Neb. Rev. Stat. § 29-1301 (Reissue 2016) generally requires that a criminal trial take place "in the county where the offense was committed."

[15,16] The courts of the county where an offense is committed have jurisdiction of the subject matter of the cause and jurisdiction to try the accused for the crime charged.[42] In a criminal case, proper venue is a jurisdictional fact that, in the absence of a defendant's waiver by requesting a change of venue, the State has the burden of proving beyond a reasonable doubt.[43]

In this case, jurisdiction and venue turn on the elements of terroristic threats. We have already determined that a recipient was an essential element of Godek's offense. Because it is undisputed that the recipients here received the threats in Sarpy County, we conclude that an essential element of Godek's offense occurred in Nebraska. That element conferred territorial jurisdiction.

We next turn to Godek's argument that venue was improper in the district court for Sarpy County. In light of our conclusion that an essential element of Godek's offense took place where the recipients of Godek's threats were located, we find that Sarpy County was "the county where the offense was committed" under the venue statute, § 29-1301. Accordingly, we conclude that venue was proper to prosecute Godek for terroristic threats.

Godek also argues that because a new, additional venue statute[44] was added after his conviction, somehow the preexisting venue statute did not provide for his offense. We disagree. Section 29-1301 covered the offense here, and we need not speculate as to the motive of legislators in adding the new statute.

---

[42] *State v. Furstenau*, 167 Neb. 439, 93 N.W.2d 384 (1958).

[43] *State v. Warlick, supra* note 41.

[44] See § 29-1301.04 (Cum. Supp. 2022).

Because venue was proper under § 29-1301, we do not address Godek's other arguments regarding the venue statute's exceptions.[45] Godek's offense occurred in only one county in Nebraska. For the same reason, we need not address the State's argument regarding venue when an offense originates in one county and terminates in another.[46]

### 3. Remaining Assignments
### of Error

Based on his statutory elements argument, Godek attacks his conviction on various grounds regarding the pretrial, trial, and posttrial proceedings. His claims involve the motion to quash, the jury instructions, the sufficiency of the evidence, the motion for a directed verdict, alleged prosecutorial misconduct, the motion for a mistrial, and the motion for a new trial.

[17] An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it.[47] That principle applies here.

As Godek's briefing and oral argument conceded, all of his remaining arguments rely on his statutory elements argument. Because we have already rejected his elements argument, his other arguments also fail. We need not give further consideration to his other assignments of error.

---

[45] See, Neb. Rev. Stat. § 25-412.03 (Reissue 2016) (cases subject to interlocal cooperation agreement); Neb. Rev. Stat. § 29-1301.01 (Reissue 2016) (crimes against person committed in multiple counties); Neb. Rev. Stat. § 29-1301.02 (Reissue 2016) (crimes committed on moving means of transportation in multiple counties); Neb. Rev. Stat. § 29-1301.03 (Reissue 2016) (crimes already adjudicated in one county, which are barred from prosecution in another county); § 29-1301.04 (crimes committed in multiple counties using electronic communication device).

[46] See, § 29-1301.01; *State v. Tiff*, 199 Neb. 519, 260 N.W.2d 296 (1977); *State v. Lindsey*, 193 Neb. 442, 227 N.W.2d 599 (1975); *State v. Garza*, 191 Neb. 118, 214 N.W.2d 30 (1974).

[47] *State v. Huston*, 298 Neb. 323, 903 N.W.2d 907 (2017).

## VI. CONCLUSION

We find no merit to Godek's argument that the terroristic threats statute does not require a recipient of the threat. Because a recipient is an essential element of the offense, Godek's other arguments fail. Viewing the evidence in the light most favorable to the prosecution, we determine the State offered sufficient evidence to prove beyond a reasonable doubt that an element of terroristic threats occurred in Sarpy County, where Godek's sisters received the threats. Accordingly, we find that the district court had jurisdiction and that venue was proper. We affirm the judgment of the district court.

Affirmed.