Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
11/03/2023 09:10 AM CDT

State of Nebraska, appellee, v.
Charles J. Simons, appellant.
___ N.W.2d ___

Filed November 3, 2023.    No. S-23-056.

1. **Constitutional Law: Search and Seizure: Motions to Suppress: Appeal and Error.** In reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, an appellate court applies a two-part standard of review. Regarding historical facts, an appellate court reviews the trial court's findings for clear error. Whether those facts trigger or violate Fourth Amendment protections is a question of law that an appellate court reviews independently of the trial court's determination.

2. **Constitutional Law: Search and Seizure: Appeal and Error.** An appellate court applies a two-part analysis when reviewing whether a consent to search was voluntary. As to the historical facts or circumstances leading up to a consent to search, the appellate court reviews the trial court's findings for clear error. However, whether those facts or circumstances constituted a voluntary consent to search, satisfying the Fourth Amendment, is a question of law, which the appellate court reviews independently of the trial court. And where the facts are largely undisputed, the ultimate question is an issue of law.

3. **Statutes: Appeal and Error.** Statutory interpretation is a question of law, which an appellate court reviews independently of the lower court's determination.

4. **Constitutional Law: Search and Seizure.** The Fourth Amendment to the U.S. Constitution and article I, § 7, of the Nebraska Constitution prohibit unreasonable searches and seizures.

5. **Constitutional Law: Search and Seizure: Evidence.** Under the exclusionary rule, evidence obtained in violation of the Fourth Amendment cannot be used in a criminal proceeding against the victim of the illegal search and seizure.

6. **Search and Seizure.** Whether a search is reasonable is determined by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests.

7. **Warrantless Searches: Search and Seizure: Probable Cause.** While searches and seizures conducted pursuant to a warrant supported by probable cause are generally considered reasonable, warrantless searches are considered per se unreasonable, subject to only a few specific exceptions that must be strictly confined by their justifications.

8. **Warrantless Searches: Probable Cause: Probation and Parole.** One exception to the warrant requirement is when special needs, beyond the normal need for law enforcement, make the warrant and probable-cause requirements impracticable, and a probation setting is an example of such a special need.

9. **Warrantless Searches.** A search undertaken with consent is a recognized exception to the warrant requirement.

10. **Constitutional Law: Search and Seizure: Duress.** To be effective under the Fourth Amendment, consent to a search must be a free and unconstrained choice, and not the product of a will overborne.

11. **Warrantless Searches: Duress.** Consent for a warrantless search must be given voluntarily and not as a result of duress or coercion, whether express, implied, physical, or psychological.

12. **Search and Seizure: Waiver: Appeal and Error.** If the State fails to raise the good faith exception to the exclusionary rule on appeal, it waives it.

13. **Sentences: Legislature: Probation and Parole.** The power of a court to impose probation must be strictly construed from the applicable statutes, because the power to fix criminal punishment is vested in the legislative branch and probation is a sentence.

14. **Statutes: Legislature: Intent.** In interpreting a statute, a court must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense.

15. **Statutes: Appeal and Error.** An appellate court will not resort to interpretation of statutory language to ascertain the meaning of words which are plain, direct, and unambiguous.

16. **Statutes.** An appellate court will not read meaning into a statute that is not there or read anything direct and plain out of a statute.

17. ____. All statutes in pari materia must be taken together and construed as if they were one law.

18. ____. To the extent there is a conflict between two statutes, the specific statute controls over the general statute.

19. **Criminal Law: Statutes.** Penal statutes must be strictly construed and are considered in the context of the object sought to be accomplished, the evils and mischiefs sought to be remedied, and the purpose sought to be served.

20. **Constitutional Law: Statutes.** Where a statute is susceptible of two constructions, one of which renders it constitutional, and the other unconstitutional, it is the duty of the court to adopt the construction which, without doing violence to the fair meaning of the statute, would render it valid.

21. **Statutes: Words and Phrases.** The general rule is that in the construction of statutes, the word "shall" is considered mandatory and inconsistent with the idea of discretion.

22. **Probation and Parole: Time.** The Nebraska Probation Administration Act expressly authorizes the extension of the original term of probation under only two circumstances.

23. **Sentences: Probation and Parole.** Noncompliance to the degree of absconsion suggests that a probationer has ceased serving his or her post-release supervision sentence.

24. **Probation and Parole: Time.** The Nebraska Probation Administration Act does not authorize an extension of the original probationary term based on the mere facts that a complaint for revocation has been filed and the revocation hearing cannot reasonably occur before the end of the probation term to determine whether a violation occurred.

25. **Search and Seizure.** If consent to a search is granted only in submission to a claim of lawful authority, the consent is invalid.

26. **Double Jeopardy: Evidence: New Trial: Appeal and Error.** The Double Jeopardy Clause does not forbid a retrial so long as the sum of all the evidence admitted by a trial court, whether erroneously or not, would have been sufficient to sustain a guilty verdict.

Appeal from the District Court for Madison County: James G. Kube, Judge. Reversed and vacated, and cause remanded for further proceedings.

Chelsey R. Hartner, Chief Deputy Madison County Public Defender, for appellant.

Michael T. Hilgers, Attorney General, and Nathan A. Liss for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Freudenberg, J.

## INTRODUCTION

The defendant appeals from his conviction of possession of a controlled substance, asserting that the search leading to the discovery of the controlled substance was unlawful and that the evidence should have been suppressed. The district court found the search was lawful because it was conducted pursuant to the terms of the defendant's probation, which the district court had pronounced were extended after the original probation term before conducting a hearing on an information to revoke probation. Because the Nebraska Probation Administration Act (the Act)[1] does not permit the increase of the term of probation to which the offender was sentenced before a hearing upon proper notice where the violation of probation is established by clear and convincing evidence,[2] we reverse and vacate, and remand for further proceedings.

## BACKGROUND

### Procedural History

In April 2019, the district court found Charles J. Simons guilty of felony and misdemeanor charges. Simons was sentenced to an 18-month probation term commencing on March 19, 2020. The scheduled end date of his probation was September 19, 2021. As a condition of probation, Simons agreed to voluntarily submit to reasonable searches of his person, residence, and vehicle at the request of his probation officer.

In July 2021, the State filed an "Information for Revocation of Probation" after Simons was arrested for driving under the influence of drugs. On August 30, Simons appeared for arraignment and requested court-appointed counsel, which the district court granted. The district court scheduled further

---

[1] Neb. Rev. Stat. §§ 29-2246 to 29-2269 (Reissue 2016 & Cum. Supp. 2018).

[2] See § 29-2267.

arraignment for September 16, only days before the end of Simons' term of probation. Before adjourning, the district court informed Simons he remained on probation subject to his probation conditions and requirements. Simons responded that he understood. Simons subsequently requested a continuance for an additional 30 days, which the district court granted to October 21.

At the October 2021 hearing, Simons denied the State's allegations in the information for revocation of his probation. The district court scheduled an evidentiary hearing for November. Then the district court, although the end date of Simons' sentenced term of probation was past, informed Simons, "I'm not going to set a bond for you, I'm just going to remind you that you're still under the requirements of the probation order that I entered previously." Simons responded that he understood.

In 2021 and 2022, the district court granted several more motions by Simons to continue the revocation hearing. While its precise date is not specified in the record, the parties indicated at oral argument that the evidentiary hearing eventually occurred in January 2023.

## SEARCH OF SIMONS' BEDROOM

On January 7, 2022, after the end date of Simons' original sentenced term of probation and during the pendency of the complaint for revocation of probation in connection to the alleged driving under the influence, two probation officers, Amy Kraft and Chad Dachtler, went to the house of Simons' parents where Simons was residing to conduct a probation search. In testimony at the hearing on the motion to suppress in this matter, Kraft testified that she believed that Simons was "ordered to comply with the search" and that a failure to do so would have resulted in custodial sanctions.

Upon arrival at Simons' residence, Kraft asked Simons if the probation officers could come inside the home. Simons agreed. Once inside, Kraft asked Simons: "'Why don't you show

me where you stay[?]'" There was no testimony concerning any verbal response from Simons. Simons escorted Kraft and Dachtler to his bedroom. Kraft and Dachtler conducted a search of the bedroom and found marijuana, marijuana paraphernalia, and a glass pipe with methamphetamine residue inside of it. Shortly thereafter, law enforcement arrested Simons and seized the items found in his bedroom.

## Possession Charges and Simons' Motion to Suppress

On February 8, 2022, the State filed a separate information against Simons, charging him with possession of a controlled substance, methamphetamine, based on the items found in his bedroom. Simons moved to suppress all evidence obtained during the search.

Simons argued the search was unlawful because it took place after his probation term had expired. Specifically, Simons claimed §§ 29-2267 and 29-2268 require a sentencing court to hold an evidentiary hearing and find a violation before revoking probation or increasing probation requirements. Because no hearing had occurred at the time of the search and Simons had not been adjudicated of the allegations in the information for revocation of his probation, he contended the district court had no authority to extend the conditions of his probation beyond the sentenced term that ended on September 19, 2021.

Simons also insisted that he did not freely and voluntarily consent to the search. When Kraft directed Simons to take her to his bedroom, Simons claimed he was merely following the instructions of his probation officer, believing he was required to do so. Simons further argued that even if Kraft simply requested to search his room, he could not have refused, because his probation conditions required him to consent and he believed a failure to do so would result in custodial sanctions.

The district court overruled the motion to suppress on the ground that Simons was still on probation and subject to his

probation terms at the time of the search. It reasoned that § 29-2267 entitles a probationer to "prompt consideration" by the sentencing court upon a filing of an information for revocation. Citing *State v. Windels*[3] and *State v. Hernandez*,[4] the court determined the "prompt consideration" requirement is satisfied if an evidentiary hearing occurs during the probationary period or within a reasonable time thereafter, so long as it occurs with reasonable promptness, due diligence, or only a reasonably necessary delay. After considering the length of the delay in holding the hearing, the reasons for the delay, and any prejudice to Simons resulting from the delay, the district court determined that each "delay, or continuance, was made at [Simons'] request, for his benefit," and that the hearing was "rescheduled at a reasonable time, thereafter," in each instance. For that reason, the district court found Kraft had authority under the order of probation to conduct the search.

The district court did not explain how the reasonableness of the delay in holding the evidentiary hearing on the complaint for revocation extended Simons' probation term beyond the original end date. Rather, it determined only that the delay was reasonable and that therefore, Simons was still on probation. The district court also noted that at no point in the various proceedings in which Simons requested continuances did he move to dismiss or otherwise argue the district court lacked jurisdiction over the matter. The district court declined to address whether Simons consented to the search, explaining that resolution of the first issue rendered the question of consent moot.

## Conviction and Sentencing

At a bench trial, the district court found Simons knowingly and intentionally possessed the controlled substance

---

[3] *State v. Windels*, 244 Neb. 30, 503 N.W.2d 834 (1993).

[4] *State v. Hernandez*, 273 Neb. 456, 730 N.W.2d 96 (2007).

methamphetamine, a Class IV felony. It sentenced Simons to a 2-year term of imprisonment with no post-release supervision.

## ASSIGNMENTS OF ERROR

Simons assigns the district court erred in (1) overruling his motion to suppress and (2) sentencing him to a 2-year term of imprisonment.

## STANDARD OF REVIEW

[1] In reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, an appellate court applies a two-part standard of review.[5] Regarding historical facts, an appellate court reviews the trial court's findings for clear error.[6] Whether those facts trigger or violate Fourth Amendment protections is a question of law that an appellate court reviews independently of the trial court's determination.[7]

[2] An appellate court applies a two-part analysis when reviewing whether a consent to search was voluntary.[8] As to the historical facts or circumstances leading up to a consent to search, the appellate court reviews the trial court's findings for clear error.[9] However, whether those facts or circumstances constituted a voluntary consent to search, satisfying the Fourth Amendment, is a question of law, which the appellate court reviews independently of the trial court.[10] And where the facts are largely undisputed, the ultimate question is an issue of law.[11]

---

[5] *State v. Elias*, 314 Neb. 494, 990 N.W.2d 905 (2023).

[6] *Id*.

[7] *See id*.

[8] *State v. Hammond, ante* p. 362, ___ N.W.2d ___ (2023).

[9] *Id*.

[10] *Id*.

[11] *Id*.

[3] Statutory interpretation is a question of law, which an appellate court reviews independently of the lower court's determination.[12]

## ANALYSIS

[4,5] The decisive issue in this appeal is the denial of Simons' motion to suppress, which asked the district court to apply the exclusionary rule to the allegedly unreasonable search of his bedroom and seizure of the items found within. The Fourth Amendment to the U.S. Constitution and article I, § 7, of the Nebraska Constitution prohibit unreasonable searches and seizures.[13] Under the exclusionary rule, evidence obtained in violation of the Fourth Amendment generally cannot be used in a criminal proceeding against the victim of the illegal search and seizure.[14]

[6,7] Whether a search is reasonable is determined by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests.[15] While searches and seizures conducted pursuant to a warrant supported by probable cause are generally considered reasonable,[16] warrantless searches are considered per se unreasonable, subject to only a few specific exceptions that must be strictly confined by their justifications.[17]

[8] One exception to the warrant requirement is "when 'special needs,' beyond the normal need for law enforcement, make the warrant and probable-cause requirement

---

[12] See *State v. Schmaltz*, 304 Neb. 74, 933 N.W.2d 435 (2019).

[13] *State v. Degarmo*, 305 Neb. 680, 942 N.W.2d 217 (2020).

[14] *In re Interest of Corey P. et al.*, 269 Neb. 925, 697 N.W.2d 647 (2005).

[15] *Samson v. California*, 547 U.S. 843, 126 S. Ct. 2193, 165 L. Ed. 2d 250 (2006).

[16] *State v. Craven*, 253 Neb. 601, 571 N.W.2d 612 (1997).

[17] See, *State v. Degarmo, supra* note 13; *State v. Smith*, 279 Neb. 918, 782 N.W.2d 913 (2010).

impracticable."[18] A probation setting is an example of such a special need.[19] This court has held that "'conditions in probation orders requiring the probationer to submit to warrantless searches, to the extent they contribute to the rehabilitation process and are done in a reasonable manner, are valid and constitutional.'"[20]

[9-11] Another recognized exception to the warrant requirement is a search undertaken with consent.[21] To be effective under the Fourth Amendment, consent to a search must be a free and unconstrained choice, and not the product of a will overborne.[22] Consent must be given voluntarily and not as a result of duress or coercion, whether express, implied, physical, or psychological.[23]

Simons argues that because the search was conducted after the expiration of the term of probation to which he had been sentenced, he was not subject to conditions of probation at the time of the search, and that accordingly, the special-needs exception to the warrant requirement did not apply. Because

---

[18] *Griffin v. Wisconsin*, 483 U.S. 868, 873, 107 S. Ct. 3164, 97 L. Ed. 2d 709 (1987).

[19] See *State v. Green*, 287 Neb. 212, 842 N.W.2d 74 (2014). See, also, *Samson v. California, supra* note 15; *United States v. Knights*, 534 U.S. 112, 122 S. Ct. 587, 151 L. Ed. 2d 497 (2001); *Griffin v. Wisconsin, supra* note 18; William E. Ringel, Searches and Seizures, Arrests and Confessions § 17:8 (2d ed. July 2023 update); 24 C.J.S. *Criminal Procedure and Rights of Accused* § 2372 (2016).

[20] *State v. Green, supra* note 19, 287 Neb. at 222, 842 N.W.2d at 86 (quoting *State v. Morgan*, 206 Neb. 818, 295 N.W.2d 285 (1980), *disapproved on other grounds, State v. Hammond, supra* note 8). See, also, *Samson v. California, supra* note 15; *United States v. Knights, supra* note 19; *Griffin v. Wisconsin, supra* note 18; *State v. Colby*, 16 Neb. App. 644, 748 N.W.2d 118 (2008); Ringel, Searches and Seizures, Arrests and Confessions, *supra* note 19; 24 C.J.S., *supra* note 19; Annot., 99 A.L.R.5th 557 (2002).

[21] See, *State v. Degarmo, supra* note 13; *State v. Schriner*, 303 Neb. 476, 929 N.W.2d 514 (2019).

[22] *State v. Degarmo, supra* note 13.

[23] *Id*.

the probation officers asked to see his room under their apparent authority of the district court's pronouncement that he was still bound by the conditions of his probation, he argues he did not voluntarily consent to the search.

The State argues that Simons was still subject to the conditions of probation at the time of the search despite its being conducted after the term set forth in the district court's original order, because the district court had not issued an order releasing Simons from probation. It takes no position on appeal on voluntary consent.

[12] The State did not raise before the district court the good faith exception to the exclusionary rule. Similarly, it has not raised the good faith exception on appeal. We have held that if the State fails to raise the good faith exception on appeal, it waives it.[24]

Thus, our resolution of whether the district court erred in denying Simons' motion to suppress is limited to determining whether the search and seizure was reasonable under the Fourth Amendment to the U.S. Constitution and article I, § 7, of the Nebraska Constitution. We hold that at the time of the search, Simons was no longer subject to the probation conditions imposed under his original sentence, because the term had ended. Therefore, the special-needs exception to the warrant requirement did not apply. We also hold that Simons did not voluntarily consent to the search.

### SIMONS WAS NOT SUBJECT TO CONDITIONS OF PROBATION

After the expiration of the term of probation originally imposed and before the hearing on the State's complaint for revocation could be held, the district court pronounced Simons was "still under the requirements of the probation order that [it] entered previously." In effect, without making a

---

[24] See, *State v. Kruse*, 303 Neb. 799, 931 N.W.2d 148 (2019); *State v. Tompkins*, 272 Neb. 547, 723 N.W.2d 344 (2006), *modified on denial of rehearing* 272 Neb. 865, 727 N.W.2d 423 (2007).

finding that Simons had violated the conditions of his probation, the district court pronounced that Simons' original sentence had been modified to enlarge the probationary term for an indeterminate period, pending the evidentiary hearing on the State's complaint for revocation. In denying the motion to suppress, the court reiterated Simons was bound by his conditions of probation after his original probationary term, reasoning that there was a pending information for revocation and that the delay in conducting the evidentiary hearing to determine whether Simons had violated probation was reasonable.

[13] The power of a court to impose probation must be strictly construed from the applicable statutes, because the power to fix criminal punishment is vested in the legislative branch and probation is a sentence.[25] The question thus presented is whether the Act provides that the timely filing of a complaint for revocation extends the probation beyond its original term for a reasonable period until the evidentiary hearing on the complaint can be held.

[14-20] In construing the relevant provisions of the Act, we are governed by familiar principles. We must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense.[26] We will not resort to interpretation of statutory language to ascertain the meaning of words which are plain, direct, and unambiguous.[27] Similarly, we will not read meaning into a statute that is not there or read anything direct and plain out of a statute.[28] All statutes in pari materia must be taken together and construed

---

[25] See, *State v. Kennedy*, 299 Neb. 362, 908 N.W.2d 69 (2018); *State v. Kantaras*, 294 Neb. 960, 885 N.W.2d 558 (2016); *State v. Lynch*, 223 Neb. 849, 394 N.W.2d 651 (1986).

[26] See *State v. Rieger*, 270 Neb. 904, 708 N.W.2d 630 (2006).

[27] See *State v. Godek*, 312 Neb. 1004, 981 N.W.2d 810 (2022).

[28] See *id*.

as if they were one law.[29] To the extent there is a conflict between two statutes, the specific statute controls over the general statute.[30] Penal statutes must be strictly construed and are considered in the context of the object sought to be accomplished, the evils and mischiefs sought to be remedied, and the purpose sought to be served.[31] Where a statute is susceptible of two constructions, one of which renders it constitutional, and the other unconstitutional, it is the duty of the court to adopt the construction which, without doing violence to the fair meaning of the statute, would render it valid.[32]

[21] Section 29-2263(1) provides that when a court sentences an offender to probation, it "shall specify the term," which, for a felony, is a maximum of 5 years. Section 29-2263(4) continues, "Upon completion of the term of probation, or the earlier discharge of the probationer, the probationer shall be relieved of any obligations imposed by the order of the court and shall have satisfied the sentence for his or her crime." The general rule is that in the construction of statutes, the word "shall" is considered mandatory and inconsistent with the idea of discretion.[33]

[22,23] The Act expressly authorizes the extension of the original term of probation under only two circumstances. The first circumstance is under § 29-2263(5), which states that "[w]henever a probationer disappears or leaves the jurisdiction of the court without permission, the time during which he or she keeps his or her whereabouts hidden or remains away from the jurisdiction of the court shall be added to the original term of probation." We have explained that noncompliance

---

[29] *State v. Jedlicka*, 305 Neb. 52, 938 N.W.2d 854 (2020).

[30] *State v. Thompson*, 294 Neb. 197, 881 N.W.2d 609 (2016).

[31] *State v. Godek, supra* note 27.

[32] *In re Adoption of Yasmin S.*, 308 Neb. 771, 956 N.W.2d 704 (2021).

[33] *Lincoln Cty. Bd. of Equal. v. Western Tabor Ranch Apts.*, 314 Neb. 582, 991 N.W.2d 889 (2023).

to the degree of abscansion suggests that a probationer has ceased serving his or her post-release supervision sentence.[34]

The second circumstance encompasses all noncompliance with conditions of probation short of abscansion. In § 29-2268, the Act specifies possible consequences that are to be determined after notice and hearing and a finding by clear and convincing evidence that the probationer violated a condition of probation. Section 29-2267(1) plainly states that the court "shall not . . . increase the probation requirements imposed on the probationer, except after a hearing upon proper notice where the violation of probation is established by clear and convincing evidence." Permitted dispositions include that "[t]he probationer's term of probation be extended, subject to the provisions of section 29-2263."[35] Other possible consequences range from receiving a "reprimand and warning"[36] to revocation of probation and the imposition on the offender of a new sentence as might have been originally imposed for the crime.[37]

Some other states' probation statutes expressly provide for the extension of the probationary term upon a showing, in the manner set forth by statute, of reasonable cause to believe the probationer has committed a probation violation.[38] Such extension lasts until the court rules, within a reasonable period, on the alleged violation.[39] We are unaware of any statutory scheme under which the mere filing of a complaint for revocation expressly extends the probationary period.

The Act has no provision expressly providing a procedure under which the probationary period will be extended

---

[34] *State v. Phillips*, 302 Neb. 686, 924 N.W.2d 699 (2019).

[35] § 29-2268(3)(e).

[36] § 29-2268(3)(a).

[37] § 29-2268(1).

[38] See, e.g., *Diaz v. State*, 306 So. 3d 1150 (Fla. App. 2020); *People v. Simmons*, 169 Misc. 2d 223, 643 N.Y.S.2d 919 (1996).

[39] See *id*.

during the pendency of a hearing on a complaint for revocation. Nevertheless, the State believes § 29-2264 implies an automatic extension of the probation term whenever a complaint for revocation is filed and the hearing thereon cannot reasonably be held before the original end date.

Section 29-2264(1) states that whenever the probationer "satisfactorily completes the conditions of his or her probation for the entire period . . . , the sentencing court shall issue an order releasing the offender from probation." Section 29-2264 continues, describing the notice of the restoration of voting rights and the process of restoring other civil rights through the pardon process—rights apparently tied to the order of release.

The State believes this obligation by § 29-2264(1) to issue an order "releasing the offender from probation" means that, conversely, probationers remain subject to the obligations imposed by the original probation order until the court affirmatively issues that order. The State goes on to suggest this effect differs based on whether a complaint for revocation has been filed against the probationer. Relying on our opinion in *State v. Kennedy*,[40] the State asserts this is because the filing of the complaint for revocation presumes the probationer has not "satisfactorily completed" the conditions of probation.[41]

The State's reliance on *Kennedy* is misplaced. *Kennedy* addressed the permissible dispositions following a finding by clear and convincing evidence that a probationer violated a condition of probation. Noting that the power of the trial court is narrowly prescribed by the provisions of the Act, we said in *Kennedy* that upon finding by clear and convincing evidence that there was a violation of post-release supervision, the district court lacked the power to discharge the probationer before the end of the probation term "'unsatisfactorily.'"[42]

---

[40] *State v. Kennedy, supra* note 25.

[41] Brief for appellee at 18.

[42] *State v. Kennedy, supra* note 25, 299 Neb. at 370, 908 N.W.2d at 75.

We acknowledged the trial court had the general statutory authority under § 29-2263 to "'discharge a probationer at any time,'" but we refused to equate the probationer's "'discharge'" with the probation's being "'terminated unsatisfactorily.'"[43] We said § 29-2263 generally governs a court's power to impose, modify, and discharge a person from probation and post-release supervision, while § 29-2268 specifically governs violations of probation and post-release supervision and thus is the more specific statute. We explained that an early "discharge" results in "satisfying the sentence imposed" and "cannot be reconciled with 'unsatisfactorily' completing the sentence."[44] Therefore, once the court found a violation of post-release supervision, the court was not empowered to invoke the early discharge provisions of § 29-2263(2). Doing so was excessively lenient.

*Kennedy* did not address whether a defendant has "satisfactorily complete[d]"[45] the conditions of probation for the entire period when the probation term has ended and revocation proceedings are pending but no violation has yet been shown. *Kennedy* also in no way addressed the implications of a court's obligations under § 29-2264(1) to issue an order releasing the offender from probation. *Kennedy* is inapposite to the present appeal.

While the State wishes to draw a distinction, there is nothing in the plain language of § 29-2264 supporting the idea that a probationer against whom a complaint for revocation has been filed is still subject to the obligations of probation after completion of the term up until the court issues an order of release, while a probationer against whom no complaint for revocation has been filed is not. The State could argue that the court cannot issue the order releasing the probationer in the event the conditions of probation for the entire period were

---

[43] *Id.* at 369, 908 N.W.2d at 74.

[44] *Id.* at 370, 908 N.W.2d at 75.

[45] § 29-2264(1).

not completed "satisfactorily," as contemplated by § 29-2264(1), but its fundamental premise that a probationer remains subject to the conditions of probation beyond the original term until the court affirmatively issues an order releasing the probationer is equally applicable to those probationers against whom no allegations of probation violations have been made. This would mean that all probationers remain bound by the conditions of their probation until the court could evaluate whether to issue an order releasing them.

Other civil rights may be affected by the failure to "releas[e]" the probationer in accordance with § 29-2264(1), but reading § 29-2264 together with the mandate of § 29-2263(4) that "the probationer shall be relieved of any obligations imposed by the order of the court" "[u]pon completion of the term of probation," we cannot conclude that probationers are, by default, still subject to the obligations imposed by the original probation order after the term has expired up until the court issues an order of "release." Furthermore, permitting the automatic extension of the probationary term until an order releasing the defendant under § 29-2264—even if this extension somehow only occurred when an information for revocation has been filed—would directly conflict with the mandate of § 29-2267(1) that "[t]he court shall not . . . increase the probation requirements imposed on the probationer, except after a hearing upon proper notice where the violation of probation is established by clear and convincing evidence." The "requirements imposed on the probationer"[46] include both the "term" that must be specified in the sentence pursuant to § 29-2263(1) and the "conditions" that, pursuant to § 29-2262(1), the court shall attach as it deems necessary. To increase the duration of probation for any length of time beyond the original term is to increase its requirements.

The State asserts that if we do not read the Act as automatically extending the term of probation until the revocation

---

[46] § 29-2267(1).

hearing can reasonably occur, probationers like Simons will obtain a "windfall"[47] by refusing to comply with the terms of their probation and may "avoid facing any consequences of a revocation proceeding by simply continuing the revocation proceeding past the original probation expiration date."[48] We disagree.

The State, like the district court, conflates the offender's obligations under the original term of probation with the court's continuing jurisdiction to punish the offender for a violation of probation following an evidentiary hearing on a timely complaint to revoke. It is well established that a court may impose consequences for a probation violation, including revocation and resentencing or extending the probationary term, after the end of the probationary period, so long as under § 29-2267 and principles of due process, the revocation occurs with reasonable promptness.[49] It does not follow from this precedent that the probation term is extended after the end of the probationary period until the revocation hearing occurs with reasonable promptness. To the contrary, our precedent regarding the continuing jurisdiction of the court to revoke probation presumes that there has been an "end of the probationary term"[50] and that "the term had ended."[51]

Whether the probationer requests a continuance of the revocation hearing is of no consequence to the court's power pursuant to § 29-2267 to extend or revoke probation once it finds by clear and convincing evidence a violation has occurred. The possible punishment for violating probation is the same. Continuances simply delay the hearing of the

---

[47] Brief for appellee at 18.

[48] *Id*. at 18-19

[49] *State v. Hernandez, supra* note 4. See, *State v. Windels, supra* note 3; *State v. White*, 193 Neb. 93, 225 N.W.2d 426 (1975); *State v. Holiday*, 182 Neb. 229, 153 N.W.2d 855 (1967), *modified* 182 Neb. 410, 155 N.W.2d 378.

[50] *State v. Windels, supra* note 3, 244 Neb. at 33, 503 N.W.2d at 836.

[51] *State v. White, supra* note 49, 193 Neb. at 94, 225 N.W.2d at 427.

revocation complaint, the possible finding of a violation, and the issuance of the sentence in the event a violation is found. Probationers do not get punished less because of the delays; the potential punishment is merely postponed. While the delays are presumably for the purpose of adequately preparing for the hearing, if the court believes the probationer is seeking a continuance for an improper purpose, it will decline to grant it. Moreover, our opinion does not suggest that the district court would be unable to impose bond conditions for the probationer's release from jail following an arrest and probable cause determination on the alleged probation violation. There is no windfall, as the State suggests.

[24] We hold that the Act does not authorize an extension of the original probationary term based on the mere facts that a complaint for revocation has been filed and the revocation hearing cannot reasonably occur before the end of the probation term to determine whether a violation occurred. The district court's pronouncement that Simons was still under the requirements of the prior probation order was of no effect. Simons was not obligated under the conditions of probation to permit the search here at issue.

### Did Simons Voluntarily Consent to Search?

The State, as mentioned, does not argue on appeal that Simons voluntarily consented to the search, and the district court made no findings pertaining to voluntary consent. Nevertheless, the circumstances surrounding the search are not in dispute. Because the question of voluntary consent was presented below[52] and whether undisputed historical facts constitute voluntary consent is a question of law,[53] we address the consent exception to the warrant requirement.

---

[52] See *State v. Thomas*, 303 Neb. 964, 932 N.W.2d 713 (2019) (appellate court will not consider issue not presented to or passed upon by trial court).

[53] *State v. Degarmo, supra* note 13.

[25] If consent is "granted only in submission to a claim of lawful authority," the consent is invalid.[54] We agree with the court in *State v. Guzman*,[55] which held that submitting to a probation officer's show of authority is coerced by the possibility that the probationer would be arrested for a violation of probation if he did not cooperate. Here, the evidence is undisputed that the district court told Simons he was still bound by the conditions of his sentenced probation after the completion of his term of probation and that the probation officers went to Simons' house to conduct a probation search. It is also undisputed that a failure to comply with a probation search could have resulted in custodial sanctions. We find that under these circumstances, Simons did not voluntarily consent to the search.

The search of Simons' bedroom was unreasonable, and the items found therein should have been suppressed. We therefore reverse Simons' conviction for possession of a controlled substance, methamphetamine, and vacate his sentence. Because we reverse the conviction and vacate the sentence, we do not address Simons' assignment of error alleging the district court imposed an excessive sentence.

### Sufficiency of Evidence

[26] We must now determine whether double jeopardy bars a retrial. We hold it does not. The Double Jeopardy Clause does not forbid a retrial so long as the sum of all the evidence admitted by a trial court, whether erroneously or not, would have been sufficient to sustain a guilty verdict.[56]

---

[54] *Schneckloth v. Bustamonte*, 412 U.S. 218, 233, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973). See *Bumper v. North Carolina*, 391 U.S. 543, 88 S. Ct. 1788, 20 L. Ed. 2d 797 (1968).

[55] *State v. Guzman*, 164 Or. App. 90, 990 P.2d 370 (1999).

[56] *State v. McCulloch*, 274 Neb. 636, 742 N.W.2d 727 (2007). See, *Lockhart v. Nelson*, 488 U.S. 33, 109 S. Ct. 285, 102 L. Ed. 2d 265 (1988); *State v. Edwards*, 286 Neb. 404, 837 N.W.2d 81 (2013); *State v. Merchant*, 285 Neb. 456, 827 N.W.2d 473 (2013); *State v. Borst*, 281 Neb. 217, 795 N.W.2d 262 (2011); *State v. Rogers*, 277 Neb. 37, 760 N.W.2d 35 (2009).

Kraft, Simons' probation officer, testified at trial that she found marijuana and a glass pipe containing methamphetamine residue in Simons' bedroom during a search of his residence. While this evidence was improperly admitted, we consider all the evidence in our double jeopardy analysis. Because the evidence presented at trial is sufficient to sustain the conviction of possession of a controlled substance, methamphetamine, double jeopardy does not bar a second trial. Thus, we remand the cause back to the district court for further proceedings consistent with this opinion.

## CONCLUSION

For the foregoing reasons, we reverse Simons' conviction, vacate the sentence, and remand the cause for further proceedings.

Reversed and vacated, and cause remanded for further proceedings.