Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
03/14/2025 08:09 AM CDT

State of Nebraska, appellee, v.
Detron L. Perry, appellant.

___ N.W.3d ___

Filed March 14, 2025.    No. S-24-225.

1. **Constitutional Law: Search and Seizure: Motions to Suppress: Appeal and Error.** When reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, an appellate court applies a two-part standard of review. Regarding historical facts, an appellate court reviews the trial court's findings for clear error, but whether those facts trigger or violate Fourth Amendment protections is a question of law that an appellate court reviews independently of the trial court's determination.

2. **Motions to Suppress: Trial: Pretrial Procedure: Appeal and Error.** When a motion to suppress is denied pretrial and again during trial on renewed objection, an appellate court considers all the evidence, both from the trial and from the hearings on the motion to suppress.

3. **Trial: Investigative Stops: Warrantless Searches: Appeal and Error.** The ultimate determinations of reasonable suspicion to conduct an investigatory stop and probable cause to perform a warrantless search are reviewed de novo, and findings of fact are reviewed for clear error, giving due weight to the inferences drawn from those facts by the trial judge.

4. **Convictions: Evidence: Appeal and Error.** In reviewing a criminal conviction for sufficiency of the evidence, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

5. **Statutes: Appeal and Error.** Statutory interpretation is a question of law that an appellate court resolves independently of the trial court.
6. **Constitutional Law: Search and Seizure: Investigative Stops: Motor Vehicles.** A traffic stop is a seizure for Fourth Amendment purposes, and therefore is accorded Fourth Amendment protections.
7. **Investigative Stops: Motor Vehicles: Police Officers and Sheriffs: Probable Cause.** As a general matter, the decision to stop a vehicle is reasonable where the police have probable cause to believe that a traffic violation has occurred. A traffic violation, no matter how minor, creates probable cause to stop the driver of a vehicle.
8. **Appeal and Error.** Plain error is error plainly evident from the record and of such a nature that to leave it uncorrected would result in damage to the integrity, reputation, or fairness of the judicial process.
9. **Sentences: Appeal and Error.** A sentence that is contrary to the court's statutory authority is an appropriate matter for plain error review.
10. ____: ____. An appellate court has the power on direct appeal to remand a cause for the imposition of a lawful sentence where an erroneous one has been pronounced.
11. **Statutes.** Basic principles of statutory interpretation generally require a court to give statutory language its plain and ordinary meaning.
12. **Statutes: Appeal and Error.** An appellate court will not resort to interpretation of statutory language to ascertain the meaning of words which are plain, direct, and unambiguous.
13. **Statutes.** It is not within the province of the courts to read meaning into a statute that is not there or to read anything direct and plain out of a statute.
14. **Words and Phrases.** As a general rule, the word "shall" is considered mandatory and is inconsistent with the idea of discretion.
15. **Criminal Law: Judgments: Sentences.** In a criminal case, the judgment is the sentence.

Appeal from the District Court for Sarpy County, Michael A. Smith, Judge. Affirmed in part, and in part vacated and remanded for resentencing.

Thomas P. Strigenz, Sarpy County Public Defender, and Christopher J. Lathrop and Ryeson Berne, Senior Certified Law Student, for appellant.

Michael T. Hilgers, Attorney General, and Nathan A. Liss for appellee.

Funke, C.J., Miller-Lerman, Cassel, Stacy, and Papik, JJ.

Funke, C.J.

## INTRODUCTION

Detron L. Perry was convicted of driving under suspension, a Class III misdemeanor, and operating a motor vehicle to avoid arrest, a Class IV felony, and sentenced to probation. Perry assigns error to the district court's denial of his motion to suppress and to the sufficiency of the evidence for both convictions. The parties also dispute whether, under Neb. Rev. Stat. § 28-905(3)(b) (Reissue 2016), a 2-year license revocation is mandatory and, by extension, whether it was plain error for the district court not to impose such a revocation. We conclude that Perry's arguments are without merit and that § 28-905(3)(b) does, in fact, require a mandatory 2-year license revocation or impoundment. We affirm in part, but because we find plain error in the sentencing, we vacate Perry's sentence and remand the cause for resentencing.

## BACKGROUND

### Traffic Stop

Just before midnight on September 8, 2021, Officer Molly Coon of the Bellevue Police Department observed a vehicle driving slowly. Coon ran the license plate number and discovered that the owner of the vehicle, Perry, had a suspended license. At that time, Coon could not determine whether Perry was the operator of the vehicle. After Coon followed the vehicle for a few moments, the vehicle changed lanes. Coon noticed that the vehicle's left rear turn signal was not working and that the only visible turn signal came from the left side mirror. Coon conducted a traffic stop of the vehicle and identified Perry as the driver. Coon then informed Perry of the issue with his turn signal.

Coon waited for a second officer to arrive before informing Perry that he needed to exit the vehicle because his license was suspended. Although not expressed to Perry, Coon intended to tow the vehicle. When Perry did not comply with

the request to exit the vehicle, Coon instructed him to put his hands on the steering wheel, to which Perry complied.

Up to this point, Coon had remained on the passenger side of the vehicle for safety purposes. Once Perry put his hands on the steering wheel, Coon walked around the vehicle to the driver's side to "compel" Perry to exit the vehicle. As Coon was opening the driver's-side door, Perry accelerated, driving away from the scene at a high rate of speed. Perry proceeded to run a red light, weaving around the car in front of him to do so.

Both parties agree that Coon did not explicitly state, at any point during the interaction, that Perry was under arrest. Perry was later located and placed under arrest.

### Video Evidence and Subsequent
### Motion to Suppress

During discovery, video evidence from both Coon's body camera and police cruiser camera was reviewed. The video evidence showed that Perry's turn signal had, in fact, been blinking during his lane change but that it was blinking at an irregular pace and was rather dim.

Based on this evidence, Perry filed a motion to suppress "any and all statements made and/or evidence seized as a result of the stop." Perry argued that since his turn signal had been functioning in some capacity, the stop was unconstitutional because there had been no probable cause for the stop and no reasonable suspicion of criminal activity.

At a subsequent hearing on the matter, Coon testified that at the time of the incident, she had been unable to see that the rear turn signal was functioning in a limited capacity, but that upon review of the video, she could clearly see "[t]he bottom light was blinking . . . really fast and at a very low output." Citing Neb. Rev. Stat. § 60-6,226 (Reissue 2021), Coon testified that even with that type of output, however, the light would not be considered in "proper working order."

The court denied Perry's motion to suppress, and the matter proceeded to trial. Perry did, however, preserve his objection

to the admission of any evidence obtained as a result of the traffic stop.

## Trial and Sentencing

Prior to opening arguments and outside the presence of the jury, the State offered exhibit 8, which contained Perry's records from the Department of Motor Vehicles (DMV), including copies of the letters notifying him of his license suspension. Perry objected to the introduction of the exhibit based on relevance. Perry's objection was overruled, and the court received exhibit 8 as evidence.

Exhibit 8 lists Perry's current address as being on Ruggles Street in Omaha, Nebraska. This address is, in fact, Perry's current address. Perry testified that at the time of the incident, his address was "506 Kings Drive" in Bellevue, Nebraska. The notice of suspension and order of suspension letters included in exhibit 8, however, were sent to an address on North 87th Avenue in Omaha. Further, the letter indicating that Perry's license had been reinstated, which was sent after the incident in question but before trial, was addressed to an apartment on "506 Canes Drive" in Bellevue.

In light of this, after the State presented its evidence, Perry moved to dismiss all charges. Specific to exhibit 8, Perry argued that the State had not presented sufficient evidence to convict him of driving under suspension because exhibit 8 does not show that any of the notices were sent to his "last-known mailing address," as required by Neb. Rev. Stat. § 60-4,100(6) (Reissue 2021). Therefore, Perry asserted that the notices were improper and that he could not have known of the suspension.

The court denied the motion, finding, under the same statute, that a notice of suspension need only be sent to the "last known address" in the DMV's records, not an individual's current address.

Perry was found guilty of both counts. Under § 28-905(3)(a)(iii), Perry's conviction for operating a motor

vehicle to avoid arrest was classified as a Class IV felony due to his reckless driving as he left the scene.

At sentencing, neither party made any arguments regarding the license revocation or impoundment requirement set out in § 28-905(3)(b). In fact, Perry specifically mentioned that since the incident, his license had been reinstated. Ultimately, Perry was sentenced to 36 months' probation. During the sentencing hearing, however, the district court judge warned, "If I find [a probation] violation, you'll get every bit of the sentence that I can impose upon you."

Perry appealed, and we moved the matter to our docket.[1]

ASSIGNMENTS OF ERROR

Perry assigns, restated, that the district court erred in (1) overruling his motion to suppress evidence obtained as a result of the vehicle stop, (2) finding that there was sufficient evidence to convict him of driving under suspension, and (3) finding that there was sufficient evidence to convict him of operating a motor vehicle to avoid arrest.

The State separately argues that it was plain error for the district court not to revoke Perry's license for 2 years under § 28-905(3)(b).

STANDARD OF REVIEW

[1] When reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, an appellate court applies a two-part standard of review.[2] Regarding historical facts, an appellate court reviews the trial court's findings for clear error, but whether those facts trigger or violate Fourth Amendment protections is a question of law that an appellate court reviews independently of the trial court's determination.[3]

---

[1] See Neb. Rev. Stat. § 24-1106(3) (Cum. Supp. 2024).

[2] *State v. Anderson*, 317 Neb. 435, 10 N.W.3d 334 (2024).

[3] *Id*.

[2] When a motion to suppress is denied pretrial and again during trial on renewed objection, an appellate court considers all the evidence, both from the trial and from the hearings on the motion to suppress.[4]

[3] The ultimate determinations of reasonable suspicion to conduct an investigatory stop and probable cause to perform a warrantless search are reviewed de novo, and findings of fact are reviewed for clear error, giving due weight to the inferences drawn from those facts by the trial judge.[5]

[4] In reviewing a criminal conviction for sufficiency of the evidence, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[6]

[5] Statutory interpretation is a question of law that an appellate court resolves independently of the trial court.[7]

## ANALYSIS

### Perry's Assignments of Error Are Without Merit

We have considered Perry's three assignments of error, and we find them all to be without merit.

First, Perry argues that because his rear turn signal was blinking, albeit in a diminished capacity, there was no probable cause for the stop and, therefore, the district court erred in overruling his motion to suppress evidence from the vehicle stop.

---

[4] *Id.*

[5] *State v. Shiffermiller*, 302 Neb. 245, 922 N.W.2d 763 (2019).

[6] *State v. Npimnee*, 316 Neb. 1, 2 N.W.3d 620 (2024).

[7] *Mullins v. Box Butte County*, 317 Neb. 937, 13 N.W.3d 67 (2024).

[6,7] A traffic stop is a seizure for Fourth Amendment purposes, and therefore is accorded Fourth Amendment protections.[8] As a general matter, the decision to stop a vehicle is reasonable where the police have probable cause to believe that a traffic violation has occurred. A traffic violation, no matter how minor, creates probable cause to stop the driver of a vehicle.[9] This probable cause is not defeated simply because the officer makes a mistake, so long as that mistake is reasonable.[10] In this case, it cannot be said that it was unreasonable for Coon to believe Perry's turn signal was not functioning properly, since it was blinking rapidly at a low output. Accordingly, there was probable cause to stop Perry's vehicle.

Second, Perry argues that there was insufficient evidence to convict him of driving under suspension, because notice of the suspension was improper. Perry notes that his address at the time of the incident was "506 Kings Drive" in Bellevue but that the notices of suspension were sent to an address on North 87th Avenue in Omaha.

Section 60-4,100(6) details the manner in which notice of suspension is to be accomplished and provides that notice of suspension should be sent "by regular United States mail to the resident's last-known mailing address as shown by the records of the [DMV]." Our case law has established that the statute does not require that notice of revocation or suspension of an operator's license be actually received or that the person involved have actual knowledge of the suspension or

---

[8] *State v. Barbeau*, 301 Neb. 293, 917 N.W.2d 913 (2018).

[9] See *id*.

[10] See *id*. See, also, *Heien v. North Carolina*, 574 U.S. 54, 135 S. Ct. 530, 190 L. Ed. 2d 475 (2014) (federal case holding that officer's mistake of law was reasonable and citing *Illinois v. Rodriguez*, 497 U.S. 177, 110 S. Ct. 2793, Ill L. Ed. 2d 148 (1990), and *Brinegar v. United States*, 338 U.S. 160, 69 S. Ct. 1302, 93 L. Ed. 1879 (1949), for the same holding regarding mistakes of fact).

revocation of his or her license.[11] Instead, the plain meaning of the statutory language only requires a letter be sent to the address shown in the records of the DMV. Viewing the evidence in the light most favorable to the State, we cannot say that a reasonable trier of fact could not have concluded that the address on North 87th Avenue in Omaha was Perry's "last-known" address, as contemplated by the § 60-4,100(6).

Third, Perry similarly argues that there was insufficient evidence to convict him of operating a motor vehicle to avoid arrest under § 28-905, since Coon had not yet specifically told him that he would be arrested or cited. We disagree with this contention; our case law has held to the contrary.[12]

Again, finding no merit to any of the above three assignments of error, we focus our attention on the State's argument regarding plain error in sentencing.

## District Court's Sentence Constituted Plain Error Under § 28-905(3)(b)

The penalties for a conviction of operating a motor vehicle to avoid arrest are set out in § 28-905. As mentioned above, the penalties for this conviction are enhanced to a Class IV felony if the act of avoiding arrest is combined with willful, reckless driving. Although Perry disputes whether the conviction itself was proper, neither party disputes that if it is proper, then Perry's behavior constituted a felony and therefore

---

[11] See *State v. Moderow*, 226 Neb. 470, 411 N.W.2d 647 (1987). See, also, *State v. Garst*, 175 Neb. 731, 123 N.W.2d 638 (1963).

[12] See *State v. Armagost*, 291 Neb. 117, 864 N.W.2d 417 (2015) (concluding that crime of operating motor vehicle to avoid arrest occurs before arrest can take place, meaning that whether defendant is actually placed under arrest is not material to conviction for this crime). See, also, *State v. Claussen*, 276 Neb. 630, 756 N.W.2d 163 (2008) (holding that evidence was sufficient to convict of operating motor vehicle to avoid arrest where police officers attempted to block in vehicle for purpose of arresting driver, but driver fled at high rate of speed before officers could make any contact with driver).

falls under subsection (3)(b) of the statute. Specifically, § 28-905(3)(b) states as follows:

> The court shall, as part of the judgment of conviction under subdivision (a) of this subsection, order that the operator's license of such person be revoked or impounded for a period of two years and order the person not to drive any motor vehicle for any purpose in the State of Nebraska for a like period. The revocation or impoundment shall be administered upon sentencing, upon final judgment of any appeal or review, or upon the date that any probation is revoked.

Neither party made any arguments at sentencing regarding this statute. Nonetheless, the State now argues that the district court committed plain error by failing to revoke Perry's license for a period of 2 years, in accordance with § 28-905(3)(b). Under § 28-905(3)(b), the State contends that the use of the phrase "[t]he court shall" makes clear that the license revocation or impoundment is mandatory in the case of all felony convictions.

Perry counters that the plain language of the statute demonstrates the opposite—that revocation or impoundment is not mandatory. He points to the second sentence in § 28-905(3)(b), stating that revocation or impoundment can take place "upon sentencing, upon final judgment of any appeal or review, or upon the date that any probation is revoked." Perry claims that because the statute permits revocation or impoundment at any of these three times, it must mean that the revocation or impoundment is a matter of discretion left to the district court. Accordingly, Perry posits that the court's warning at sentencing that "[i]f I find [a probation] violation, you'll get every bit of the sentence that I can impose upon you," shows that the court chose to impose a license revocation only if Perry's probation was revoked. As such, he asserts that it is improper for this court to comment on matters of discretion on plain error review.

We agree with the State and conclude that a 2-year license revocation or impoundment is mandatory for all felony convictions under § 28-905(3)(b) and, therefore, it was plain error for the district court not to impose such a revocation or impoundment.

[8-10] We first explain our framework for plain error review. Plain error is error plainly evident from the record and of such a nature that to leave it uncorrected would result in damage to the integrity, reputation, or fairness of the judicial process.[13] A sentence that is contrary to the court's statutory authority is an appropriate matter for plain error review.[14] An appellate court has the power on direct appeal to remand a cause for the imposition of a lawful sentence where an erroneous one has been pronounced.[15] Accordingly, in order to determine whether Perry's sentence constituted plain error, we must determine whether § 28-905(3)(b) imposes a mandatory 2-year license revocation.

In *State v. Collins*,[16] we briefly touched on this question and indicated that as compared to the misdemeanor provision in § 28-905(2), the statutory language in subsection (3)(b) required mandatory revocation. This, however, was not the legal basis for that decision, and no analysis was conducted on the issue. In *State v. Janis*,[17] the Nebraska Court of Appeals, relying on the language from *Collins*, specifically concluded that revocation was mandatory in the case of a Class IV felony under § 28-905(3)(b). Although on slightly different grounds, we have also come to a similar conclusion when interpreting Nebraska's driving under the influence statutes,

---

[13] *State v. Dat, ante* p. 311, 15 N.W.3d 410 (2025).

[14] *State v. Roth*, 311 Neb. 1007, 977 N.W.2d 221 (2022).

[15] *Id*.

[16] *State v. Collins*, 307 Neb. 581, 950 N.W.2d 89 (2020).

[17] *State v. Janis*, 32 Neb. App. 49, 992 N.W.2d 772 (2023).

which include language nearly identical to that at issue here.[18] We agree with the outcome of the above-mentioned cases and use this opportunity to provide a fuller analysis as it relates to the specific statutory language at issue in this case.

[11-13] Basic principles of statutory interpretation generally require a court to give statutory language its plain and ordinary meaning.[19] An appellate court will not resort to interpretation of statutory language to ascertain the meaning of words which are plain, direct, and unambiguous.[20] It is not within the province of the courts to read meaning into a statute that is not there or to read anything direct and plain out of a statute.[21]

[14] The first sentence of § 28-905(3)(b) states that "[t]he court shall, as part of the judgment of conviction" revoke or impound an individual's license for 2 years. We have consistently concluded that, as a general rule, the word "shall" is considered mandatory and is inconsistent with the idea of discretion.[22] The lack of discretion in this mandate becomes even clearer when subsection (3)(b) is contrasted with other provisions in § 28-905 that use the word "may."

[15] As to the phrase in § 28-905(3)(b) that revocation or impoundment shall occur "as part of the judgment of conviction," Black's Law dictionary defines "judgment of conviction" as "1. [t]he written record of a criminal judgment, consisting of the plea, the verdict or findings, the adjudication, and the sentence. . . . 2. A sentence in a criminal case."[23] Accordingly,

---

[18] See *State v. Hense*, 276 Neb. 313, 753 N.W.2d 832 (2008) (concluding that 15-year license revocation is mandatory part of any sentence for felony conviction under Neb. Rev. Stat. § 60-6,197.06 (Cum. Supp. 2006), even when sentence is probation).

[19] *Mullins v. Box Butte County, supra* note 7.

[20] *State v. Godek*, 312 Neb. 1004, 981 N.W.2d 810 (2022).

[21] *Id*.

[22] See, *Fountain II v. Douglas Cty. Bd. of Equal.*, 315 Neb. 633, 999 N.W.2d 135 (2024); *State v. Irish*, 298 Neb. 61, 902 N.W.2d 669 (2017).

[23] Black's Law Dictionary 1007 (12th ed. 2024). See, also, *State v. Gnewuch*, 316 Neb. 47, 3 N.W.3d 295 (2024).

our case law recognizes that in a criminal case, the judgment is the sentence.[24] We also recognize that probation is a sentence.[25]

In accordance with the above review of the relevant language, it seems clear that the statute's plain meaning calls for a mandatory license revocation or impoundment in cases of Class IV felony convictions under § 28-905, regardless of the type of sentence imposed.

Perry's approach to § 28-905(3)(b), which focuses almost exclusively on the second sentence, would essentially require us to read the entirety of the first sentence out of the provision. The plain and unambiguous mandate imposed by the use of the word "shall" does not, however, permit such an approach. The second sentence does not change the clear and unambiguous meaning of the first sentence and, as such, the first sentence is decisive.

We clarify, however, that nothing in our holding here should be read to indicate that revocation or impoundment must begin at the time of sentencing. We acknowledge that, in other contexts, we have interpreted language like that found in the second sentence of § 28-905(3)(b) to grant the court discretion regarding *when* a license revocation may take effect, but not as to *whether* it would be imposed.[26]

As noted above, there is no dispute in this case that because of Perry's willfully reckless driving to avoid arrest, he was convicted of the greater felony offense, thereby placing the offense within the purview of subsection (3)(b) of § 28-905. Accordingly, based on the plain and unambiguous meaning of the words "shall" and "judgment of conviction," we conclude that Perry's license should have been revoked or impounded,

---

[24] *State v. Irish, supra* note 22.

[25] See *State v. Hense, supra* note 18 (citing Neb. Rev. Stat. §§ 29-2246(4) (Cum. Supp. 2006) and 29-2260(4) (Reissue 1995)).

[26] See, *State v. Policky*, 285 Neb. 612, 828 N.W.2d 163 (2013); *State v. Fuller*, 278 Neb. 585, 772 N.W.2d 868 (2009).

without discretion, for a period of 2 years as part of his sentence of probation.

## CONCLUSION

For the reasons explained above, we conclude that Perry's assignments of error lack merit. However, we also conclude that in accordance with the mandatory language of § 28-905(3)(b), the district court plainly erred by not imposing a 2-year license revocation or impoundment as part of Perry's sentence.

Affirmed in part, and in part vacated
and remanded for resentencing.

Freudenberg, J., not participating.