Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
09/19/2025 09:09 AM CDT

STATE OF NEBRASKA, APPELLEE, V.
SHAQUILLE M. FALCON, APPELLANT.

___ N.W.3d ___

Filed September 19, 2025.    No. S-23-953.

1. **Constitutional Law: Search and Seizure: Motions to Suppress: Appeal and Error.** When reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, an appellate court applies a two-part standard of review. Regarding historical facts, an appellate court reviews the trial court's findings for clear error, but whether those facts trigger or violate Fourth Amendment protections is a question of law that an appellate court reviews independently of the trial court's determination.

2. **Trial: Evidence: Appeal and Error.** An appellate court reviews the trial court's ruling on authentication for abuse of discretion.

3. **Constitutional Law: Witnesses: Appeal and Error.** An appellate court reviews de novo a trial court's determination of the protections afforded by the Confrontation Clause and reviews the underlying factual determinations for clear error.

4. **Constitutional Law: Search and Seizure.** All evidence obtained by searches and seizures in violation of the federal Constitution is inadmissible in a criminal trial in a state court.

5. ____: ____. Under the Fourth Amendment, a search with consent is a reasonable search.

6. **Warrantless Searches: Search and Seizure: Proof.** The State has the burden of showing the applicability of one or more of the exceptions to the warrant requirement.

7. **Search and Seizure: Motor Vehicles.** The driver of a vehicle is the person who has immediate possession of and control over the vehicle and has the authority to consent to a search of that vehicle.

8. **Constitutional Law: Search and Seizure.** The touchstone of the Fourth Amendment is reasonableness, and the reasonableness of a

search is determined by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests.

9. **Constitutional Law: Police Officers and Sheriffs: Search and Seizure.** Law enforcement officers are often required to perform noncriminal community caretaking functions, which are totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute. Such community caretaking functions are a legitimate governmental interest.

10. ____: ____: ____. Community caretaking functions are not subject to a special Fourth Amendment doctrine or rule—the basic Fourth Amendment question of reasonableness applies.

11. **Police Officers and Sheriffs: Evidence.** Police practices trigger the harsh sanction of exclusion only when they are deliberate enough to yield meaningful deterrence and culpable enough to be worth the price paid by the justice system.

12. **Rules of Evidence: Hearsay.** A declarant is the key for purposes of Neb. Rev. Stat. § 27-803(6) (Cum. Supp. 2024)—an out-of-court statement needs to be made as part of the declarant's business.

13. ____: ____. For self-authentication under Neb. Rev. Stat. § 27-902(11) (Cum. Supp. 2024) to apply in a criminal case, such that extrinsic evidence of authenticity is not a required condition precedent to admissibility, the domestic record sought to be introduced must meet the requirements of Neb. Rev. Stat. § 27-803(6)(a) (Cum. Supp. 2024).

14. **Constitutional Law: Witnesses.** The Confrontation Clause guarantees a defendant's right to confront witnesses who bear testimony against him or her.

Petition for further review from the Court of Appeals, Pirtle, Bishop, and Arterburn, Judges, on appeal thereto from the District Court for Lancaster County, Susan I. Strong, Judge. Judgment of Court of Appeals affirmed.

Robert Wm. Chapin, Jr., for appellant.

Michael T. Hilgers, Attorney General, and Teryn Blessin for appellee.

Funke, C.J., Miller-Lerman, Cassel, Stacy, Papik, Freudenberg, and Bergevin, JJ.

Bergevin, J.

## I. INTRODUCTION

The Nebraska Court of Appeals affirmed Shaquille M. Falcon's convictions on direct appeal.[1] Falcon petitioned for further review and assigned that the Court of Appeals erred in its resolution of each of his four assignments of error.[2] We granted further review primarily to address the Court of Appeals' analysis of Falcon's motion to suppress and its interpretation and application of Neb. Rev. Stat. § 27-902(11) (Cum. Supp. 2024), which provides for the self-authentication of domestic records that meet the requirements of Neb. Rev. Stat. § 27-803(6) (Cum. Supp. 2024).

We agree with the Court of Appeals' conclusions and resolution of Falcon's appeal, and we affirm. However, our reasoning contains minor differences from that of the Court of Appeals, which we highlight below.

## II. BACKGROUND

Falcon was convicted of possession of a firearm by a prohibited person, a Class ID felony,[3] and driving under the influence (DUI), first offense, a Class W misdemeanor.[4] The parties stipulated that Falcon had a prior felony conviction, and it was undisputed that he was a prohibited person. The main issue at the jury trial was whether Falcon knowingly possessed the firearm.

The theory of Falcon's defense was that unbeknownst to him, the firearm was present in the vehicle when he borrowed it. To prove Falcon knowingly possessed the firearm, the State primarily relied on two pieces of evidence: the firearm that was discovered in the vehicle and Facebook messages that were purportedly sent by Falcon. The State contended that the

---

[1] See *State v. Falcon*, 33 Neb. App. 331, 16 N.W.3d 393 (2025).

[2] See, generally, Neb. Ct. R. App. P. § 2-102(F) to (H) (rev. 2022).

[3] See Neb. Rev. Stat. § 28-1206 (Cum. Supp. 2022).

[4] See Neb. Rev. Stat. §§ 60-6,196 and 60-6,197.03(2) (Reissue 2021).

Facebook messages associated the firearm with Falcon, not the vehicle. Falcon challenged the admissibility of evidence related to the firearm and the Facebook messages, which are the two main subjects of our further review.

The factual background of this case is set forth in detail within the Court of Appeals' opinion.[5] Accordingly, we supply additional background information below relevant to our analyses of the issues before us.

## III. ASSIGNMENTS OF ERROR

Falcon assigns, restated, that the Court of Appeals erred by not concluding that the district court erred (1) in finding that the vehicle search did not constitute an unreasonable search in violation of the Fourth Amendment and failing to suppress evidence of the firearm and (2) by receiving Facebook messages into evidence because the exhibits lacked foundation, were altered by the State, and deprived Falcon the right to confront the person who allegedly put together the file from which the exhibits came. He also assigns that the Court of Appeals erred in (3) finding that sufficient evidence was adduced to support his convictions and (4) not finding plain error in the jury instructions.

## IV. STANDARD OF REVIEW

[1] When reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, an appellate court applies a two-part standard of review.[6] Regarding historical facts, an appellate court reviews the trial court's findings for clear error, but whether those facts trigger or violate Fourth Amendment protections is a question of law that an appellate court reviews independently of the trial court's determination.[7]

---

[5] See *State v. Falcon, supra* note 1.

[6] *State v. Perry*, 318 Neb. 613, 17 N.W.3d 504 (2025).

[7] *Id*.

[2] Where the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court, an appellate court reviews the admissibility of evidence for an abuse of discretion.[8] Because authentication rulings are necessarily fact specific, a trial court has discretion to determine whether evidence has been properly authenticated.[9] An appellate court reviews the trial court's ruling on authentication for abuse of discretion.[10]

[3] An appellate court reviews de novo a trial court's determination of the protections afforded by the Confrontation Clause and reviews the underlying factual determinations for clear error.[11]

In reviewing a criminal conviction for sufficiency of the evidence, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact.[12] The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[13]

Whether jury instructions are correct is a question of law, which an appellate court resolves independently of the lower court's decision.[14]

---

[8] *State v. Swartz*, 318 Neb. 553, 17 N.W.3d 174 (2025); *State v. Abligo*, 312 Neb. 74, 978 N.W.2d 42 (2022).

[9] *VKGS v. Planet Bingo*, 309 Neb. 950, 962 N.W.2d 909 (2021).

[10] *Id*.

[11] *State v. Vaughn*, 314 Neb. 167, 989 N.W.2d 378 (2023), *cert. denied* ___ U.S. ___, 144 S. Ct. 241, 217 L. Ed. 2d 109.

[12] *State v. Perry, supra* note 6.

[13] *Id*.

[14] *State v. Haynie*, 317 Neb. 371, 9 N.W.3d 915 (2024).

## V. ANALYSIS

The primary issues on further review concern the admission of two categories of evidence at trial: (1) evidence of the firearm that the jury found Falcon had possessed illegally and (2) Facebook messages that served as circumstantial evidence of Falcon's knowing possession of the firearm. Falcon argues that both were improperly admitted. We address each in turn.

### 1. Admission of Evidence of Firearm

#### (a) Additional Background

The circumstances of the firearm's discovery that are relevant to our analysis are undisputed. In the early hours of New Year's Day 2022, Falcon was driving a vehicle with permission from the vehicle's owner, who was his cousin's sister. Falcon high-centered the vehicle on railroad tracks near the intersection of 1st and F Streets in Lincoln, Nebraska.

After law enforcement arrived on the scene, an officer performed DUI tests on Falcon. The DUI investigation occurred while Falcon and a passenger in the vehicle sat in a police cruiser because it was extremely cold outside. While the DUI tests were being conducted, the passenger became disorderly, and law enforcement officers dismissed him. The passenger walked away from the scene.

Shortly thereafter, the passenger returned, no longer agitated. He informed two law enforcement officers that his house keys and phone were in the vehicle, but he was unsure of their precise location within the vehicle. We learn from the officers' body camera footage that without his phone, the passenger would have needed to walk several miles in the extreme cold to reach his house, and that without his keys, he would have been unable to enter his house once he arrived.

The officers granted the passenger access to the vehicle's passenger compartment so that he could search for and retrieve his keys and phone. The passenger searched for some time without success. Eventually, one officer began to assist the

passenger in the search. While assisting in the search, the officer opened the vehicle's center console and discovered the firearm.

Before trial, Falcon moved to suppress evidence of the firearm on the ground that the officer's search violated the Fourth Amendment's prohibition against unreasonable searches. At the hearing on Falcon's motion, the officer who aided the passenger in the search for the passenger's keys and phone inside the vehicle testified that when the passenger opened the back door of the vehicle, the officer detected the odor of marijuana. The trial court concluded that the odor of marijuana provided the officer with probable cause to search the vehicle under the automobile exception to the Fourth Amendment's general warrant requirement. It overruled Falcon's motion to suppress evidence related to the firearm.

On appeal before the Court of Appeals, Falcon argued that the district court erred by not suppressing evidence related to the firearm. He contended that the search was without probable cause or reasonable suspicion and that the officer's detection of the odor of marijuana was "'purely pretextual.'"[15]

The Court of Appeals concluded that the search was not unconstitutional because it was conducted with the passenger's consent and fell within the automobile exception to the warrant requirement. Specifically, it found that even though the passenger was not the driver of the vehicle, "it was reasonable for [the officer] to believe that [the passenger] had authority to consent to the search of the vehicle of which he had been a passenger in order to help locate his house keys" and that the officer did not exceed the scope of the passenger's consent.[16] Additionally, the Court of Appeals found that even though the vehicle was allegedly high-centered on the railroad tracks, "it had not lost its inherent mobility" and was

---

[15] *State v. Falcon, supra* note 1, 33 Neb. App. at 349, 16 N.W.3d at 409.

[16] *Id.* at 351-52, 16 N.W.3d at 410.

readily mobile for the purpose of the automobile exception[17] and that the officer had probable cause due to the presence of the odor of marijuana.

### (b) Discussion

As we read the Court of Appeals' opinion, the court made two separate conclusions. First, it concluded that the officer's search did not violate the Fourth Amendment because the officer had the passenger's consent to open the door to the vehicle and to join the search for the passenger's keys and phone. It then also concluded that once the officer detected the odor of marijuana, the officer had probable cause to search the vehicle for marijuana. We agree that the officer's search did not violate the Fourth Amendment; however, we disagree with the Court of Appeals' reasoning.

[4] "'All evidence obtained by searches and seizures in violation of the Federal Constitution is inadmissible in a criminal trial in a state court.'"[18] The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

Article I, § 7, of the Constitution of this state is substantially identical.[19]

---

[17] *Id.* at 353, 16 N.W.3d at 411.

[18] *State v. Easter*, 174 Neb. 412, 422, 118 N.W.2d 515, 521 (1962) (quoting *Mapp v. Ohio*, 367 U.S. 643, 81 S. Ct. 1684, 6 L. Ed. 2d 1081 (1961)). See *State v. Montoya*, 305 Neb. 581, 597, 941 N.W.2d 474, 490 (2020) ("[e]vidence obtained as the fruit of an illegal search or seizure is inadmissible in a state prosecution and must be excluded").

[19] See *State v. Goff*, 174 Neb. 548, 118 N.W.2d 625 (1962) (holding exclusionary rule applicable to Neb. Const. art. I, § 7), *disapproved on other grounds, State v. Fletcher*, 221 Neb. 562, 378 N.W.2d 859 (1985).

As the U.S. Supreme Court has stated: "The text of the [Fourth] Amendment thus expressly imposes two requirements. First, all searches and seizures must be reasonable. Second, a warrant may not be issued unless probable cause is properly established and the scope of the authorized search is set out with particularity."[20] "The 'touchstone of the Fourth Amendment is "reasonableness,"' as measured in objective terms."[21]

"It is well settled under the Fourth and Fourteenth Amendments that a search conducted without a warrant issued upon probable cause is per se unreasonable[,] subject only to a few specifically established and well-delineated exceptions."[22] It is "because the ultimate touchstone of the Fourth Amendment is 'reasonableness' [that] the warrant requirement is subject to certain exceptions."[23] "It is equally well settled that one of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent."[24]

[5] We recognize that this court has occasionally referred to consent as a "waiver" of the right to be free from

---

[20] *Kentucky v. King*, 563 U.S. 452, 459, 131 S. Ct. 1849, 179 L. Ed. 2d 865 (2011).

[21] *Barnes v. Felix*, ___ U.S. ___, 145 S. Ct. 1353, 221 L. Ed. 2d 751 (2025) (quoting *Brigham City v. Stuart*, 547 U.S. 398, 126 S. Ct. 1943, 164 L. Ed. 2d 650 (2006)). See *Pennsylvania v. Mimms*, 434 U.S. 106, 98 S. Ct. 330, 54 L. Ed. 2d 331 (1977). See, also, *State v. McGovern*, 311 Neb. 705, 974 N.W.2d 595 (2022); *State v. Ferguson*, 301 Neb. 697, 919 N.W.2d 863 (2018).

[22] *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973) (internal quotation marks omitted) (emphasis omitted).

[23] *Brigham City v. Stuart, supra* note 21, 547 U.S. at 403.

[24] *Schneckloth v. Bustamonte, supra* note 22, 412 U.S. at 219. See, e.g., *State v. Simons*, 315 Neb. 415, 996 N.W.2d 607 (2023); *State v. Milos*, 294 Neb. 375, 882 N.W.2d 696 (2016).

unreasonable searches and seizures.[25] However, we disapprove of that articulation. One does not waive his or her constitutional right to be free from unreasonable searches by consenting to a search; rather, consent is an exception to the requirements of a warrant and probable cause.[26] Simply put, under the Fourth Amendment, a search with consent is a reasonable search.

[6] It is also well settled that the consent of one who possesses common authority over premises or effects is valid as against the absent, nonconsenting person with whom that authority is shared.[27] Furthermore, a warrantless search is valid when based upon consent of a third party whom the police, at the time of the search, reasonably believed possessed authority to consent to a search of the property, even if it is later demonstrated that the individual did not possess such authority.[28] The State has the burden of showing the

---

[25] See, e.g., *State v. Andera*, 307 Neb. 686, 950 N.W.2d 102 (2020); *State v. Hill*, 298 Neb. 675, 905 N.W.2d 668 (2018); *State v. Reinpold*, 284 Neb. 950, 824 N.W.2d 713 (2013); *State v. Canbaz*, 270 Neb. 559, 705 N.W.2d 221 (2005); *State v. Mata*, 266 Neb. 668, 668 N.W.2d 448 (2003), *disapproved on other grounds, State v. Hammond*, 315 Neb. 362, 996 N.W.2d 270 (2023), and *abrogated on other grounds, State v. Rogers*, 277 Neb. 37, 760 N.W.2d 35 (2009); *State v. Dallmann*, 260 Neb. 937, 621 N.W.2d 86 (2000); *State v. Ready*, 252 Neb. 816, 565 N.W.2d 728 (1997), *disapproved on other grounds, State v. Hammond, supra* note 25; *State v. Konfrst*, 251 Neb. 214, 556 N.W.2d 250 (1996); *State v. Dixon*, 237 Neb. 630, 467 N.W.2d 397 (1991); *State v. Walker*, 236 Neb. 155, 459 N.W.2d 527 (1990); *State v. Manns*, 220 Neb. 426, 370 N.W.2d 157 (1985).

[26] See *Illinois v. Rodriguez*, 497 U.S. 177, 187, 110 S. Ct. 2793, 111 L. Ed. 2d 148 (1990) ("what is at issue . . . is not whether the right to be free of searches has been *waived*, but whether the right to be free of *unreasonable* searches has been *violated*").

[27] *State v. Mata, supra* note 25. See *United States v. Matlock*, 415 U.S. 164, 94 S. Ct. 988, 39 L. Ed. 2d 242 (1974).

[28] *State v. Andera, supra* note 25. See *Illinois v. Rodriguez, supra* note 26.

applicability of one or more of the exceptions to the warrant requirement.[29]

[7] The driver of a vehicle is the person who has immediate possession of and control over the vehicle and has the authority to consent to a search of that vehicle.[30] Here, Falcon was the driver of the vehicle, and he did not give his consent to the search of the vehicle.

The issue then becomes whether the passenger had the authority to consent to the search of the vehicle or whether, at the time of the search, the officers reasonably believed the passenger had such authority. In this case, both questions must be answered in the negative. The passenger was sent away from the scene, where the vehicle remained. The passenger returned to ask the officers for access to the vehicle, and it was the officers who granted the passenger access to the vehicle—it was not the passenger who granted the officers access. Under these circumstances, the passenger did not have common authority over the vehicle such that he could consent to a search of the vehicle. Nor do the facts support that the officers reasonably believed the passenger had the authority to consent to the search of the vehicle. Under the Fourth Amendment, the officer's search of the vehicle based on the consent of the passenger was not reasonable.

[8] However, one is not assured by the Fourth Amendment that "no government search [of one's vehicle] will occur unless [one] consents; but that no such search will occur that is 'unreasonable.'"[31]

> The touchstone of the Fourth Amendment is reasonableness, and the reasonableness of a search is determined "by assessing, on the one hand, the degree to

---

[29] *State v. Shiffermiller*, 302 Neb. 245, 922 N.W.2d 763 (2019). See *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S. Ct. 2022, 29 L. Ed. 2d 564 (1971).

[30] See *State v. Andera, supra* note 25. See, also, *U.S. v. Eldridge*, 984 F.2d 943 (8th Cir. 1993).

[31] *Illinois v. Rodriguez, supra* note 26, 497 U.S. at 183.

which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests."[32]

[9,10] Law enforcement officers are often required to perform noncriminal "community caretaking functions," which are totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute.[33] Such community caretaking functions are a legitimate governmental interest.[34] Community caretaking functions are not subject to a special Fourth Amendment doctrine or rule—the basic Fourth Amendment question of reasonableness applies.[35]

The search of the vehicle for the passenger's keys and phone in this case involved such community caretaking—the search was unrelated to the violation of any criminal statute. It is undisputed that very early in the morning on the day of the incident, when Lincoln was experiencing extremely cold temperatures, the passenger was without his house keys, without a phone, and miles from his house. In these specific circumstances, it was reasonable for the officers to grant the passenger access to the vehicle so that the passenger could search for his keys and phone. Likewise, when the passenger did not readily locate the items and invited the officer's assistance, it was reasonable for the officer to assist the passenger in his attempts to find the items inside the passenger compartment of the vehicle. And when the passenger acquiesced to the officer's assistance and made no indication of any

---

[32] *United States v. Knights*, 534 U.S. 112, 118-19, 122 S. Ct. 587, 151 L. Ed. 2d 497 (2001) (quoting *Wyoming v. Houghton*, 526 U.S. 295, 119 S. Ct. 1297, 143 L. Ed. 2d 408 (1999)).

[33] See *Cady v. Dombrowski*, 413 U.S. 433, 441, 93 S. Ct. 2523, 37 L. Ed. 2d 706 (1973).

[34] See *Caniglia v. Strom*, 593 U.S. 194, 141 S. Ct. 1596, 209 L. Ed. 2d 604 (2021).

[35] See *id.*

objection thereto, it was reasonable for the officer to search the vehicle's center console—a place readily accessible from the passenger seat of the vehicle and in which the passenger's keys or phone could have been located.

[11] In addition, even if the officer's actions had been unreasonable, the exclusionary rule would not apply in this case. The exclusionary rule was created by the U.S. Supreme Court and is "a deterrent sanction that bars the prosecution from introducing evidence obtained by way of a Fourth Amendment violation."[36] "The rule's sole purpose . . . is to deter future Fourth Amendment violations."[37] "The fact that a Fourth Amendment violation occurred—i.e., that a search or arrest was unreasonable—does not necessarily mean that the exclusionary rule applies."[38] "Police practices trigger the harsh sanction of exclusion only when they are deliberate enough to yield 'meaningfu[l]' deterrence, and culpable enough to be 'worth the price paid by the justice system.'"[39] "When the police exhibit 'deliberate,' 'reckless,' or 'grossly negligent' disregard for Fourth Amendment rights, the deterrent value of exclusion is strong and tends to outweigh the resulting costs."[40] In this case, the record does not show that the officer's decision to attempt to provide aid to the passenger exhibited a deliberate, reckless, or grossly negligent violation of the Fourth Amendment such that the officer's conduct was something that should be deterred.

---

[36] *Davis v. United States*, 564 U.S. 229, 231-32, 131 S. Ct. 2419, 180 L. Ed. 2d 285 (2011). See, *Mapp v. Ohio, supra* note 18; *Weeks v. United States*, 232 U.S. 383, 34 S. Ct. 341, 58 L. Ed. 652 (1914), *overruled on other grounds, Elkins v. United States*, 364 U.S. 206, 80 S. Ct. 1437, 4 L. Ed. 2d 1669 (1960).

[37] *Davis v. United States, supra* note 36, 564 U.S. at 236-37.

[38] *Herring v. United States*, 555 U.S. 135, 140, 129 S. Ct. 695, 172 L. Ed. 2d 496 (2009) (emphasis omitted).

[39] *Davis v. United States, supra* note 36, 564 U.S. at 240.

[40] *Id.*, 564 U.S. at 238.

We note that our conclusion in this case should not be read to intimate that when an officer is carrying out community caretaking functions, all searches are reasonable, or the exclusionary rule cannot apply.

Even though our reasoning differs from that employed by the Court of Appeals, we affirm its conclusion that the officer's search of the vehicle was reasonable.[41]

### 2. Admission of Facebook Messages

Falcon also takes issue with the Court of Appeals' conclusion that the district court did not err in admitting Facebook messages into evidence at trial.

### (a) Additional Background

At trial, the State sought to introduce Facebook messages it received from Meta Platforms, Inc. (Meta), pursuant to a warrant. The State elicited testimony from a law enforcement officer that a PDF file of Facebook messages contained "the amount of pages that came in the return [the officer] received from FaceBook"; an account number that was "specifically for [the] FaceBook account that [the officer] wrote the warrant for"; "the name Shaquille Falcon, Sr., [that was] associated with the account"; and the "last [4] digits of the target account number." The State also elicited testimony that a document was a "letter of authenticity from FaceBook or Meta," which "validate[d] the records" of the account's messages and had the same account number. The State then offered the PDF file and the letter of authenticity. Falcon objected based on foundation, hearsay, and a violation of the Confrontation Clause.

The district court overruled Falcon's objections. It did not state its reasoning. However, the State had argued that,

---

[41] See *Syring v. Archdiocese of Omaha*, 317 Neb. 195, 210, 9 N.W.3d 445, 458 (2024) ("appellate court may affirm a lower court's ruling that reaches the correct result, albeit based on different reasoning").

under the recently enacted business records exception codified at § 27-902(11), the Facebook messages were "self-authenticating" and were similarly excepted from the hearsay prohibition because they were a business record under § 27-803(6).

The State then sought to introduce nine separate excerpts from the PDF file. The State elicited testimony from the officer that certain portions of the excerpts were redacted because they were not relevant to the case and that the timecodes of the messages in the excerpts were converted into central time. The State offered the exhibits. Falcon objected based on foundation, hearsay, and relevancy, and he requested an opportunity to ask the officer "some voir dire questions." The court granted Falcon's request.

In voir dire, the officer testified that a PDF file cannot be modified but also that he was able to modify the PDF file by running the file "through a program that then switches it to whichever time that you're in." The officer had no knowledge of how Facebook marked the timecodes of the messages in the PDF file, nor any training or knowledge that "shows that we don't have to worry about anything else being switched" by the program. The officer testified that he was not the person who ran the PDF file through the program and admitted that "things" could have been added to or subtracted from the file by use of the program. The State then elicited further testimony from the officer that the timecodes in the PDF file were in coordinated universal time and that the timecodes were the only modification made to the PDF file. The court overruled Falcon's objections.

In a lengthy and detailed section of its opinion, the Court of Appeals considered the self-authentication provided by § 27-902(11). It ultimately agreed with the position taken by the State on appeal, which was contrary to the State's position below. Noting that § 27-902 is similar to Fed. R. Evid. 902, the Court of Appeals adopted the reasoning of the

U.S. Court of Appeals for the Third Circuit.[42] In sum, the Court of Appeals concluded that user-generated social media records are not business records that can be self-authenticated under § 27-902(11). It then went on to consider whether the Facebook messages were sufficiently authenticated under Neb. Rev. Stat. § 27-901(1) (Reissue 2016). The Court of Appeals determined that the officer's testimony constituted sufficient evidence to authenticate the Facebook messages and that the content purportedly authored by Falcon was admissible as admissions by a party opponent under Neb. Rev. Stat. § 27-801(4)(b) (Cum. Supp. 2024).

#### (b) Discussion

We agree with the Court of Appeals' thorough analysis set forth in its opinion of § 27-902(11). However, we address a few additional points of law not expressly discussed in the Court of Appeals' decision.

Section 27-902 provides, in relevant part:

> Extrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to the following:
>
> . . . .
>
> (11)(a) The original or a copy of a domestic record that meets the requirements of subdivision (6) of section 27-803, as shown by a certification of the custodian or another qualified person.
>
> (b) Before the trial or hearing, the proponent must give an adverse party reasonable written notice of the intent to offer the record and must make the record and certification available for inspection so that the party has a fair opportunity to challenge them on the ground that the sources of information or the method or circumstances of preparation indicate a lack of trustworthiness.

---

[42] See *U.S. v. Browne*, 834 F.3d 403 (3d Cir. 2016). See, also, *U.S. v. Lamm*, 5 F.4th 942 (8th Cir. 2021); *U.S. v. Farrad*, 895 F.3d 859 (6th Cir. 2018).

We note that Falcon has not raised an argument concerning the State's compliance with § 27-902(11)(b), and, accordingly, we do not address it herein.

As the text plainly indicates, self-authentication under § 27-902(11) hinges upon the domestic record meeting the requirements of § 27-803(6)—colloquially referred to as the "business records exception" to the hearsay rule.[43] If the record does not meet the requirements of § 27-803(6), it cannot be self-authenticating. However, whereas § 27-902(11) is similar to its federal counterpart, § 27-803(6) differs from Fed. R. Evid. 803(6).[44]

Section 27-803(6) contains two clauses. We note that § 27-803(6)(b) expressly "shall not apply in any criminal proceeding." Accordingly, we are only concerned here with § 27-803(6)(a). Section 27-803 provides, in relevant part:

Subject to the provisions of section 27-403, the following are not excluded by the hearsay rule, even though the declarant is available as a witness:

. . . .

(6)(a) A memorandum, report, record, or data compilation, in any form, of acts, events, or conditions, other than opinions or diagnoses, made at or near the time of such acts, events, or conditions, in the course of a regularly conducted activity, if it was the regular course of such activity to make such memorandum, report, record, or data compilation at the time of such act, event, or condition, or within a reasonable time thereafter, as shown by the testimony of the custodian or other qualified witness or by a certification that complies with subdivision (11) or (12) of section 27-902 or with a statute permitting certification, unless the source of information

---

[43] See § 27-801. See, also, Fed. R. Evid. 801.

[44] See, also, *Arens v. NEBCO, Inc.*, 291 Neb. 834, 856, 870 N.W.2d 1, 18 (2015) ("Nebraska's business record[s] exception to hearsay is not a carbon copy of its federal counterpart").

or method or circumstances of preparation indicate lack of trustworthiness. The circumstances of the making of such memorandum, report, record, or data compilation, including lack of personal knowledge by the entrant or maker, may be shown to affect its weight.

[12] To fall under the business records exception to the hearsay rule, the out-of-court statement offered for the truth of the matter asserted must be "[a] memorandum, report, record, or data compilation."[45] We have held that the party seeking to admit evidence under this exception to the hearsay rule bears the burden of establishing foundation for the evidence under a three-part test.[46]

First, the proponent must establish that the activity recorded is of a type that regularly occurs in the course of the business' day-to-day activities. Second, the proponent must establish that the record was made as part of a regular business practice at or near the time of the event recorded. Third, the proponent must authenticate the record by a custodian or other qualified witness.[47]

As one commentator has explained, "The declarant is the key here—the out-of-court statement needs to be made as part of [the declarant's] business."[48]

Here, the declarant of the statements contained in the Facebook messages that the State sought to introduce was Falcon, and the statements were not made as part of his business. As the Court of Appeals observed, the initial relevance of the social media records depended upon authorship. Thus, the State was required to produce evidence sufficient to support a finding that Falcon authored the messages at issue as a

---

[45] § 27-803(6)(a).

[46] See *State v. Robinson*, 272 Neb. 582, 724 N.W.2d 35 (2006), *abrogated on other grounds, State v. Thorpe*, 280 Neb. 11, 783 N.W.2d 749 (2010).

[47] *Id*. at 613, 724 N.W.2d at 65.

[48] G. Michael Fenner, The Hearsay Rule, 225-26 (2003).

condition precedent to their admissibility.[49] Because the user-generated social media evidence the State sought to introduce did not meet the requirements of § 27-803(6), the State was not relieved by § 27-902(11) of its burden under § 27-901 to provide extrinsic evidence of the evidence's authenticity as a condition precedent to admissibility.

[13] For self-authentication under § 27-902(11) to apply in a criminal case, such that extrinsic evidence of authenticity is not a required condition precedent to admissibility, the domestic record sought to be introduced must meet the requirements of § 27-803(6)(a). However, the record may still be admissible if sufficient evidence is introduced to support a finding that the record is what its proponent claims it to be in order to satisfy the authentication requirement of § 27-901.

We agree with the Court of Appeals that the elicited testimony of the law enforcement officer at trial, as recounted above and set forth in further detail in the Court of Appeals' opinion, provided sufficient evidence to authenticate the PDF file of Facebook messages. Whether Falcon authored the Facebook messages at issue was ultimately a factual issue for the jury, and the statements were nonhearsay as a statement by a party opponent under § 27-801.[50]

Falcon also takes issue with the excerpts of the PDF file that were introduced by the State as separate exhibits. However, once the PDF file was introduced in its entirety, the content of the excerpts was already in evidence. There is no merit to Falcon's separate objections to the excerpts. Additionally, whether the content of the messages had been modified by law enforcement, as Falcon intimated and argues, was a factual issue for the jury and readily discernible by comparison with the PDF file. Our review of the record confirms that the

---

[49] See § 27-901(1).

[50] See, also, *State v. Savage*, 301 Neb. 873, 920 N.W.2d 692 (2018), *modified on denial of rehearing* 302 Neb. 492, 924 N.W.2d 64 (2019).

only modification made to the PDF file was the conversion of the timecodes from coordinated universal time to central time.

Lastly, Falcon argues that his Sixth Amendment right to be confronted with the witnesses against him was violated because he was not able to cross-examine the Meta employee who certified the Facebook messages. We note that the Court of Appeals did not directly address this argument.

[14] The Confrontation Clause of the Sixth Amendment to the U.S. Constitution guarantees a defendant's right to confront "witnesses" who """"bear testimony""" against him or her.[51] In this case, we are guided by the U.S. Supreme Court's decision in *Dowdell v. United States*.[52] We recognize that *Dowdell* preceded *Crawford v. Washington*,[53] which changed the legal landscape of the Confrontation Clause. However, *Dowdell* is consistent with *Crawford* and remains good law.[54]

In *Dowdell*, the petitioner challenged the certification of records of prior court proceedings. The Court recognized that the Confrontation Clause "was intended to prevent the conviction of the accused upon depositions or ex parte affidavits, and particularly to preserve the right of the accused to test the recollection of the witness in the exercise of the right of cross-examination."[55] The Court held that those who certified

---

[51] *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 309, 129 S. Ct. 2527, 174 L. Ed. 2d 314 (2009) (quoting *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004)).

[52] *Dowdell v. United States*, 221 U.S. 325, 31 S. Ct. 590, 55 L. Ed. 753 (1911).

[53] *Crawford v. Washington, supra* note 51.

[54] See *Davis v. Washington*, 547 U.S. 813, 126 S. Ct. 2266, 165 L. Ed. 2d 224 (2006). See, also, *Melendez-Diaz v. Massachusetts, supra* note 51, 557 U.S. at 349 (Kennedy, J., dissenting; Roberts, C.J., and Breyer and Alito, JJ., join) ("as recently as *Davis*, the Court reaffirmed *Dowdell*"). Cf. *Melendez-Diaz v. Massachusetts, supra* note 51, 557 U.S. at 323, n.8 ("dissent's reliance on our decision in *Dowdell* [is] misplaced").

[55] *Dowdell v. United States, supra* note 52, 221 U.S. at 330 (emphasis omitted).

the records "were not witnesses against the accused."[56] The certification of the records "involved no inquiry into the guilt or innocence of the accused" and was "no[t] production of testimony against the accused."[57]

Similarly, the certification of the PDF file by the Meta employee did not inquire into Falcon's guilt or innocence of the charges and did not constitute testimony against him. As discussed above, neither Facebook nor Meta was a declarant of the statements contained in the Facebook messages within the PDF file. The statements contained within the PDF file inquired into Falcon's guilt or innocence. The mere existence of the messages that the Meta employee certified did not. For purposes of the Confrontation Clause, the Meta employee was not a witness, and his certification was not testimony. There is no merit to Falcon's argument that his right to confront witnesses against him was violated.

### 3. Other Assignments of Error

As for Falcon's remaining assignments of error, in light of our resolution of Falcon's first two assignments of error, we agree with the thorough and sound reasoning of the Court of Appeals.

### VI. CONCLUSION

Having reviewed the briefs and record and having heard oral arguments, we conclude on further review that the decision of the Court of Appeals is correct, and, accordingly, we affirm its decision affirming Falcon's convictions for possession of a firearm by a prohibited person and DUI.

Affirmed.

---

[56] *Id.*, 221 U.S. at 330.

[57] *Id.*, 221 U.S. at 331. See *Melendez-Diaz v. Massachusetts, supra* note 51, 557 U.S. at 323, n.8 ("[persons] who made the statements at issue in *Dowdell* were not witnesses for purposes of the Confrontation Clause because their statements [did not] concern[] . . . any facts regarding defendants' guilt or innocence").